AMERICAN BANKERS LIFE ASSURANCE COMPANY OF FLORIDA, Plaintiff-Appellant,

v.

TRI CITY BANK & TRUST COMPANY, et al., Defendants-Appellees.

No. 81–5124.

United States Court of Appeals, Sixth Circuit.

Argued March 22, 1982.

Decided April 30, 1982.

Rehearing and Rehearing En Banc Denied June 22, 1982.

Bernard H. Cantor, Johnson City, Tenn., for plaintiff-appellant.

Thomas L. Kilday, Greenville, Tenn., Frank Winston, III, Bristol, Tenn., for defendants-appellees.

Before MERRITT and JONES, Circuit Judges and WEICK, Senior Circuit Judge.

PER CURIAM.

In this Tennessee diversity action by an insurance company against a bank, arising from a fraudulent insurance scheme by one of the bank's officers, the District Court after a bench trial entered judgment in favor of the defendant bank, thereby declining to shift to the bank a loss of $83,986.00 suffered by the plaintiff insurance company as a result of the bank officer's defalcation.

In July 1976, the defendant bank entered a master credit life group insurance agency contract with plaintiff insurance company. Under the master contract, the bank, as agent, was granted the authority to solicit credit life and accident insurance policies from its borrowers, collect premiums, keep records and make accountings to the insurance company. The bank was to receive forty per cent of all premiums collected as a commission for selling the policies. The president of the bank signed the master contract on behalf of the bank.

One of the vice presidents of the bank, David Powers, made twelve false claims to the insurance company in 1977 and 1978. The false claims were on non-existent loans to people who were dead. As each false claim was submitted, the insurance company processed the claim and sent back a check payable to the bank. Powers deposited those checks into an account of the bank from which bank officers could withdraw funds. The insurance commissions were used by the bank and its officers to increase the compensation of various bank officers who as sub-agents sold the credit life policies to borrowers. Powers withdrew the premium payments made in connection with the false claims from the account so that the end result of the fraudulent transactions was that Powers received the benefit of most of the payment of the commissions. It appears undisputed as testified by one of the bank officers that the "bank accounts were used by Mr. Powers to launder the money and make the disbursements look more legitimate than they were." (Joint App. at 155.)

Powers had the bank's authority to issue the credit life insurance certificates under the master contract as part of his duties as a loan officer. Although the loans themselves were reviewed by the bank president on a weekly basis, no review of the insurance policies was made. Powers pursued his fraudulent scheme without the knowledge or involvement of anyone else at the bank.

The District Court ruled in favor of the bank on the theory that Powers acted as agent for the insurance company, and not as agent for the bank, when issuing the insurance policies and fraudulent claims. The District Court relied on Tennessee Code Annotated § 56–6–124 which states:

> Every agent ... who solicits ... an application for insurance of any kind shall, in any controversy arising from the application for insurance or any policy issued in connection therewith between the insured or his beneficiary and the insurer be regarded as the agent of the insurer and not the insured or his beneficiary. This provision shall not affect the apparent authority of an agent.

The District Judge concluded that because the bank was an "insured" or "beneficiary"

of the individual credit life policies on borrowers, Powers, as the soliciting agent under the statute, must be deemed "the agent of the insurer and not the insured." The loss arising from the agent's defalcations must, therefore, fall upon the insurance company.

The difficulty with this argument is that Tennessee courts appear to hold that the statute making an insurance salesman the agent of the insurance company does not apply to group insurance policies authorized by a master group policy. In *Nidiffer v. Clinchfield Railroad Co.*, 600 S.W.2d 242 (Tenn.App.1980) (permission to appeal denied May 19, 1980), employees brought an action against their employer who purchased and maintained group life insurance. The court held that such a group master policy "is not within the scope of the statute." 600 S.W.2d at 245, n.2.

█ We believe that the statute relied upon by the District Court is likewise inapplicable to the group policy at issue here. The statute is designed to protect insureds and beneficiaries who buy policies from insurance salesmen and who have no other direct connection with the insurance company. *See Maryland Casualty Co. v. McTyier*, 150 Tenn. 691, 692, 266 S.W. 767 (1924). When, as in this case, the bank as an insured is also a party to the master group policy for the issuance of credit life insurance, and acts as agent for the insurance company, receiving commissions on the insurance sales, a direct connection with the insurance company exists. The purpose of the statute is not furthered by characterizing the bank's employees as agents of the insurance company.

█ Moreover, it is clear that the bank had the right to control the actions of Powers and other officers who sold the insurance policies. Under Tennessee law Powers' wrongful conduct should be imputed to the bank as principal under the doctrine of respondeat superior. In *Stone & Webster Engineering Corp. v. Hamilton National Bank*, 199 F.2d 127 (6th Cir. 1952), this Court applied Tennessee law to a fact pattern similar to the present one. As part of

his duties at Stone & Webster, employee Bales obtained war bonds from the Bank to sell to Stone & Webster employees. He was given access to the banking house for this purpose. Bales took advantage of his access to purloin packages of cash from behind tellers' cages. The money was placed in Stone & Webster's treasury to repay a shortage in his accounts with his employer. Both parties conceded that Stone & Webster had no knowledge of their employee's thefts. The Court relies upon the following principle of agency to support its decision in favor of the bank against Stone & Webster, Bales' employer: " 'A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.' " 199 F.2d at 132, quoting Restatement of Agency § 261 (1933). The nature of Bales' employment gave him access to the banking house and made the fraud possible.

In the instant case, Powers was placed in a position to commit the fraud because of his position of loan officer and because of the master contract negotiated between the bank and the insurance company. The bank received the benefit of premium commissions paid under the master contract. As a result of Powers' fraudulent scheme, the bank also received indirect benefit when Powers used the fraudulently obtained and laundered funds to pay back the bank's accounts he had previously drawn from. Under such circumstances *Stone & Webster* indicates the loss caused by the fraudulent scheme should fall on the bank as Powers' employer rather than the insurance company.

Accordingly, we reverse and remand for further proceedings not inconsistent with this opinion. In so doing, we do not foreclose the consideration of other defenses which were raised by defendants in the trial court but were pretermitted by the District Court.