James T. CONTI, Plaintiff–Appellant,

v.

PNEUMATIC PRODUCTS CORPORATION and H. Michael McCurry, Defendants–Appellees.

No. 91–3918.

United States Court of Appeals, Sixth Circuit.

Argued May 7, 1992.

Decided Oct. 6, 1992.

Peter E. Tamborski, Thompson, Hine & Flory, Cincinnati, Ohio, Guy O. Farmer, II (argued and briefed), Foley & Lardner, Jacksonville, Fla., for defendants-appellees.

Before: GUY and BOGGS, Circuit Judges; and RONEY, Senior Circuit Judge [*].

RONEY, Senior Circuit Judge.

This is an appeal from an order dismissing a diversity jurisdiction complaint, in which the plaintiff asserted long arm jurisdiction, because of lack of personal jurisdiction over the defendants. Agreeing that the defendants had insufficient contacts with the plaintiff in Ohio to subject them to the court's jurisdiction in this case, we affirm.

The suit involves allegations of false representation by Defendants in connection with the recruitment of Plaintiff, a Ohio resident, for a high-level administrative position at the company's office in Florida.

The recitation of facts is taken largely from the district court's opinion. *See James T. Conti v. Pneumatic Products Corp.*, No. C–1–91–081 (S.D.Ohio, Aug. 27, 1991). Defendant Pneumatic Products (Pneumatic) is a Delaware corporation, a manufacturer and seller of pneumatic air drying systems, with its principal place of business in Ocala, Florida. Defendant H. Michael McCurry, the president and chief executive officer of Pneumatic during 1990, is a resident of Florida. Plaintiff James T. Conti is a resident of Ohio.

In late 1989 or early 1990, Conti, while in Ohio, responded to a Wall Street Journal advertisement for a directory of executive recruiting firms. The directory included a listing for Management Recruiters of Lake County, Inc. (Management Recruiters), an executive recruiting firm headquartered in Mount Dora, Florida. In early March 1990, Conti mailed a letter and resume to Management Recruiters, which were placed in a file maintained for unsolicited resumes.

William H. Blessing (argued and briefed), Cincinnati, Ohio, for plaintiff-appellant.

[*] The Honorable Paul H. Roney, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

Late in March 1990, McCurry asked Management Recruiters to perform an executive search for the position of vice-president of engineering at Pneumatic's facility in Ocala, Florida. Management Recruiters contacted Conti and later forwarded his resume to Pneumatic. Acting on behalf of Pneumatic, Management Recruiters made several phone calls to Conti in Ohio and sent Pneumatic literature to him in Ohio. Conti alleges that during these telephone conversations Management Recruiters acted as agent for Pneumatic and made fraudulent misrepresentations regarding Pneumatic's financial condition.

Management Recruiters arranged for Conti to travel to Florida to meet with McCurry and other Pneumatic officials on two occasions. Shortly following Conti's second trip to Florida, Pneumatic offered him the position, and he accepted in May 1990.

Although Pneumatic apparently did not want Conti to start work before mid-June, Conti asked to be placed on the payroll in May because he was unemployed. Thus his employment with Pneumatic began May 21, 1990, and for the first month he was in Ohio doing work preparatory to his move to Florida. Pneumatic paid Conti a salary for that month. Conti began work in Pneumatic's facility in Ocala, Florida, on June 18, 1990. On October 5, 1990, the position of vice-president of engineering was eliminated and Conti was terminated.

Conti filed a complaint in Ohio against Pneumatic and McCurry for fraudulent misrepresentation, promissory estoppel, breach of fiduciary duty, and breach of contract. He alleged that the defendants made fraudulent misrepresentations to him regarding Pneumatic's financial condition, both directly during his visits to Florida and indirectly during telephone calls to him in Ohio by Pneumatic's agent, Management Recruiters. He asserted that he detrimentally relied on these misrepresentations in deciding to accept Pneumatic's offer, leave his employment in Ohio, and reject another job offer.

In response to Defendants' motion to dismiss for lack of personal jurisdiction, the district court allowed the parties to conduct some discovery, but did not conduct an evidentiary hearing. In a detailed order granting Defendants' motion to dismiss, the district court stated that Ohio's long arm statute, Ohio Rev.Code § 2307.-382(A)(4) and (A)(6), provides for personal jurisdiction over both Pneumatic and McCurry, but determined that the exercise of personal jurisdiction over the defendants would offend the traditional concepts of fair play and substantial justice embodied in the due process clause of the Fourteenth Amendment.

Conti appeals, urging that the Ohio court's exercise of personal jurisdiction over Defendants is constitutional. We need not resolve the initial dispute of the parties over the burden Conti must carry to establish jurisdiction. Conti urges that he bears only the burden of demonstrating facts which support a *prima facie* case for jurisdiction, because there was no evidentiary hearing. *See American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168–69 (6th Cir.1988). Defendants argue that Conti must demonstrate Ohio's jurisdiction by a preponderance of the evidence rather than by simply making a *prima facie* showing, because the district court permitted discovery and did not rely solely on affidavits. *See Market/Media Research v. Union Tribune Pub.*, 951 F.2d 102, 104 (6th Cir. 1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *Serras v. First Tennessee Bank, N.A.*, 875 F.2d 1212, 1214 (6th Cir.1989).

Even under the lesser *prima facie* showing, however, considering the evidence in the light most favorable to the plaintiff, Conti has not demonstrated facts supporting jurisdiction. The essential facts are not really disputed. The only real dispute is in the significance of these facts. Therefore, the district court did not err in deciding the jurisdiction issue relatively early in this case without conducting an evidentiary hearing. *See Market/Media*, 951 F.2d at 106.

We need not determine the correctness of the district court's statutory decision.

The controlling issue on this appeal is the constitutional standard. To subject a defendant to the personal jurisdiction of a court, the defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)). "In analyzing the due process limits of personal jurisdiction, a distinction is made between 'general' jurisdiction and 'specific' jurisdiction." *Third Nat'l. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir.1989) (citations omitted), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990).

■ A proper exercise of general jurisdiction requires the "defendant's contacts with the forum state [to be] of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l. Bank*, 882 F.2d at 1087. Plaintiff does not even argue for general jurisdiction over McCurry. Although Plaintiff argues that the district court had general jurisdiction over Pneumatic, the facts do not support the argument.

Pneumatic is not licensed to do business in Ohio, does not maintain an office or employees in Ohio, and does not own any property in Ohio. Pneumatic sells its products all over the United States. Sales are made either to distributors for resale or directly by Pneumatic to the end user. Pneumatic sells its products in Ohio through two distributors. These distributors act as Pneumatic's agents in connection with Pneumatic's direct sales to end users; and, they regularly purchase Pneumatic products for resale in Ohio. The annual sales of one of these distributors to Ohio customers total approximately $900,-000. The distributors themselves usually service the products they sell. On occasion, they are visited and telephoned by Pneumatic employees for technical support. Conti has not established a *prima facie* case that Pneumatic's contacts with Ohio are of a "continuous and systematic" nature such that Ohio could constitutionally maintain general jurisdiction over Pneumatic or McCurry in an action unrelated to its Ohio contacts. *Cf. Third Nat'l. Bank*, 882 F.2d at 1088–89. *But cf. Michigan Nat'l. Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 465–67 (6th Cir.1989).

■ Specific jurisdiction is exercised over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *See Third Nat'l. Bank*, 882 F.2d at 1089. The district court correctly focused on specific jurisdiction, rather than general jurisdiction.

■ The Sixth Circuit has utilized a three part test for determining whether specific jurisdiction may be exercised in compliance with the requirements of due process.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.
>
> Second, the cause of action must arise from the defendant's activities there.
>
> Third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*See Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

The district court found that Defendants do not meet the first part of this test. Conti alleges that Management Recruiters had authority to act on behalf of Pneumatic; and, therefore, Pneumatic is liable for the fraudulent representations made by Management Recruiters in Ohio to Conti. *American Bankers Life v. Tri City Bank*, 677 F.2d 28, 30 (6th Cir.1982). The question before us on this appeal is not, however, whether the acts of Management Recruiters will ultimately result in Pneumatic's liability to Conti. The question is

whether the alleged actions of Management Recruiters, McCurry, or Pneumatic demonstrate that Defendants purposefully availed themselves of the privilege of acting in Ohio or causing a consequence in the forum state such that Ohio may exercise personal jurisdiction over Defendants in connection with those actions.

The record fully supports the district court's finding that Defendants' contacts with Ohio were random, fortuitous, and attenuated, and therefore do not meet the first part of the *Mohasco* test. Defendants did not purposefully recruit an Ohio resident to fill the position of vice-president of engineering at Pneumatic's facility in Ocala, Florida. Instead Defendants contacted a local executive recruiting firm headquartered in Mount Dora, Florida. Conti ordered a directory of executive recruiting firms and sent an unsolicited resume to Management Recruiters. Defendants learned of an Ohio resident's interest in the position of vice-president of engineering in its Florida office due to this unilateral activity of Plaintiff.

Conti argues the district court wrongfully applied a mechanical "but for" test for jurisdiction, citing *Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 910 (6th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988), which states that "the question of which party solicited the business interface is irrelevant, so long as defendant then directed its activities to the forum resident." A full reading of the district court's opinion discloses, however, that the court did not apply a mechanical test, such as was rejected in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985), but rather considered all the facts to determine the "purposeful availment" requirement as set forth in *Burger King*.

■ The "purposeful availment" requirement

ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person." Jurisdiction is proper, however, where the contacts proximately result from the actions by the defendant *himself* that create a "substantial connection" with the forum State.

*Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183–84 (citations and footnote omitted) (emphasis in original). A forum resident's contract with an out-of-state defendant alone is insufficient to automatically establish jurisdiction over the defendant. *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185; *see Lanier*, 843 F.2d at 910. The district court thus properly considered all relevant matters as set forth by this Court in *Lanier*. "[P]rior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing need to be addressed to evaluate, in a 'highly realistic' way, the intended future consequences that are 'the real object of the business transaction.'" *Lanier*, 843 F.2d at 910 (apparently quoting *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185).

Although there may have been an isolated phone conversation between McCurry and Conti while Conti was in Ohio, the record supports the district court's statement that Defendant never directly contacted Conti in Ohio prior to hiring him. Substantially all contact between Conti and McCurry occurred when both McCurry and Conti were in Florida. Although Conti alleges that Defendants paid for and mailed airline tickets to Conti in Ohio, mailed other materials directly to Conti in Ohio, conducted extensive contract negotiations with Conti in Ohio through Management Recruiters, and mailed an employment contract offer letter to Conti in Ohio, these alleged contacts are insufficient to establish personal jurisdiction over Defendants in Ohio.

In *Serras v. First Tennessee Bank, N.A.*, 875 F.2d 1212, 1217 (6th Cir.1989), although the Court reversed the district court's grant of the defendant's motion to dismiss, the Court stated that personal jurisdiction would not have been established if the only contact was that the defendant made an out-of-state telephone call to the plaintiff in the forum state to solicit plaintiff to engage in an out-of-state transac-

tion. In *Serras* the defendant traveled to the forum state to solicit the plaintiff's business and allegedly made fraudulent representations while in the state. 875 F.2d at 1217. The Court distinguished the facts of *Serras* in *Market/Media Research v. Union Tribune Pub.*, 951 F.2d 102, 106 (6th Cir.1991), *petition for cert. denied,* —— U.S. ——, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992), and stated that "[e]ven though Defendants made telephone calls and sent mail to [Plaintiff] in Ohio, the quality and nature of their contacts with Ohio fall short of the requirements of due process." 951 F.2d at 105. A similar holding was made by the Court in *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293 (6th Cir.1989), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990), where the Court held that contract negotiations which began in Florida continued with telephone calls from the defendant to the plaintiff in the forum state, and culminated in plaintiff's signing the contract in the forum state were "random," "fortuitous," and "attenuated" contacts and an insufficient basis for haling non-resident defendants into the foreign jurisdiction. 885 F.2d at 1300–01.

This case is unlike *Lanier v. American Bd. of Endodontics,* 843 F.2d 901, 907–11 (6th Cir.1988), where contacts between the plaintiff and the defendant Board were by mail and telephone. In that case the Board was a nationwide organization, depended on having members in every state, availed itself of the opportunity to gain members in forum state, and had a substantial impact on the forum state through its certification of members who practiced in the forum state. 843 F.2d at 911. No such facts are present here.

Furthermore as to jurisdiction over McCurry, "[i]f such suits against officers of national corporations were ever permitted, the individuals could be sued in every state of the union whenever they make telephone calls or write letters to" a job applicant who later "claims that they constitute misrepresentations." *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 931 (6th Cir.1974).

"[E]ach [*Mohasco*] criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." *LAK,* 885 F.2d at 1303. Conti's failure to demonstrate the "purposeful availment" requirement of *Mohasco* means that the Ohio court may not exercise personal jurisdiction over Defendants.

In view of our decision, then, we need not decide the correctness of the district court's holding that Defendants do not meet the second *Mohasco* requirement. The district court held that Plaintiff's cause of action does not arise from Defendants' contacts with the forum. The court stated that Plaintiff's action is primarily related to alleged fraudulent misrepresentations made by Defendants during Plaintiff's trips to Florida. The court doubted whether Plaintiff could reasonably rely on any representations made by Management Recruiters. The court held, therefore, that Plaintiff's action lacks a substantial connection to activities of Defendants in Ohio. *See Mohasco,* 401 F.2d at 384 n. 27; *see also Third Nat'l. Bank,* 882 F.2d at 1091 n. 2.

■ The exercise of jurisdiction in this case would not comport with the traditional notions of fair play and substantial justice. Here, a Florida based company utilized a Florida based recruiter to bring in viable executive candidates for consideration. To hold under these facts that the state of residence of any such candidate could exercise jurisdiction over the Florida company would be unfair. Such a burden placed on a company could unnecessarily restrict nationwide searches for candidates. Having considered the "burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief" and having weighed "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering substantive social policies," we hold the district court correctly ruled that Ohio may not properly exercise jurisdiction over Defendants in this case. *Asahi Metal Industry Co. v. Superior Court,* 480 U.S.

102, 113, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) (quotation omitted).

AFFIRMED.

BOGGS, Circuit Judge, dissenting.

Today the majority holds that the United States Constitution prevents the district court from exercising jurisdiction in this case pursuant to the Ohio long-arm statute. A consideration of the facts before us and the precedents of the Supreme Court and of this Circuit does not support the majority's conclusion. This is especially true given that this case is at a very early stage and, in this Circuit, the plaintiff is only required to make a prima facie showing of jurisdiction in order to defeat dismissal. Further, in analyzing the pleadings at this stage, the court must construe them in a light most favorable to the plaintiff and cannot weigh the controverting factual assertions made by the defendants. *See Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir.1991). I therefore dissent.

I

This is a personal jurisdiction case under the Ohio long-arm statute. The case was dismissed by the district court for lack of personal jurisdiction over the defendants. James Conti filed this suit against Pneumatic Products Corp. ("PPC") and H. Michael McCurry. The district court held that Ohio's long-arm statute provides for personal jurisdiction over both PPC and McCurry. However, the district court ultimately found that exercise of jurisdiction in this case would violate the Due Process Clause of the fourteenth amendment to the United States Constitution.

PPC is a Delaware corporation with its principal place of business in Ocala, Florida. McCurry is a resident of Florida and was the president and CEO of PPC during 1990. PPC sells industrial drying systems all over the United States. Sales are made either to authorized distributors for resale or directly by PPC to the end user. PPC is not licensed to do business in Ohio, it does not maintain an office or employees in Ohio, and it does not own any property in Ohio. PPC does, however, sell its products in Ohio through two distributors. These two PPC representatives are responsible for soliciting business for PPC in Ohio. The annual sales of one of these distributors to Ohio customers totals approximately $900,000. From time to time PPC sends its employees into Ohio for consultation with these distributors.

Conti is a resident of Ohio. The gravamen of Conti's complaint was that PPC and McCurry fraudulently induced him to terminate previously-accepted employment and to move to Florida to accept an executive position with PPC. Conti was terminated by PPC shortly after he moved to Florida because the company was having financial problems. In his complaint, Conti asserted claims of common law fraud, promissory estoppel, breach of fiduciary duty, and breach of contract.

In late 1989 or early 1990, Conti, while in Ohio, read an advertisement in the Wall Street Journal for a directory of executive recruiting firms. Conti sent away for the directory. It contained a listing for Management Recruiters of Lake County, Inc., located in Mt. Dora, Florida. On March 2, 1990, Conti mailed a letter and resume to Management Recruiters. This letter was placed in a file of unsolicited resumes.

In March 1990, McCurry asked Management Recruiters to perform an executive search for the position of vice president of engineering at PPC in Ocala. Roger Holloway, the owner of Management Recruiters, had in the past solicited prospective employees for PPC from various parts of the United States. McCurry made numerous representations about the financial health of PPC to Holloway, which Holloway assumed were truthful.

Holloway then began calling Conti in Cincinnati to recruit him for the PPC position. He called Conti numerous times both at home and at work. Holloway also sent PPC literature to Conti. During the same time Conti made numerous calls to Holloway in Florida, or directly to PPC headquarters, in response to calls received from Holloway. Conti alleges that during these conversations, Holloway fraudulently mis-

represented PPC's financial health and stability. Conti claims to have relied on these representations in leaving Ohio to go to Florida, initially for interviews and later for employment.

The record in this case reflects that Holloway kept in touch with McCurry through this entire process and McCurry knew that Holloway was soliciting Conti. Holloway's statements to Conti were based on information from McCurry. PPC then invited Conti to travel to Florida twice for interviews. PPC made Conti's travelling arrangements and sent plane tickets to Conti in Ohio. After Conti returned to Ohio from these interviews, PPC conducted extensive contract negotiations with him. During these negotiations, PPC either directly or through its agent, Management Recruiters, mailed employment offers and related material to Conti in Ohio. Direct telephone negotiations took place with Conti. All of this activity was purposefully directed at Conti in Ohio. Conti eventually accepted PPC's offer. He accepted the offer while he was in Ohio. Thus, both the negotiation and eventual formation of the employment contract took place in Ohio. Prior to accepting the PPC job, Conti had tentatively accepted a position with General Dynamics in Detroit. Conti withdrew that tentative acceptance so that he could accept PPC's offer of employment.

Conti's employment with PPC officially began on May 21, 1990. For the first month of his employment, Conti remained in Ohio. In other words, Conti was an employee on PPC's payroll for one month in the state of Ohio. He eventually moved to Florida in June 1990 and began working at PPC on June 18. Soon after he moved to Florida, Conti learned that the statements made about PPC's financial health were false. By October 1990, McCurry terminated Conti's employment because of PPC's financial difficulties. Conti then returned to Ohio.

PPC claims that it did not give Conti specific data concerning the company or its financial statements, but gave only general information. PPC also contends that all contacts, both in person and by phone, between McCurry and Conti occurred in Florida. They also claim that Conti had no written contract when he reported for work in Florida on June 18, 1990. Most importantly for this case, PPC argues that its contacts with Ohio in this matter are insufficient to support personal jurisdiction.

## II

We review issues of personal jurisdiction *de novo*. This case presents a question of law, founded on Ohio's long-arm statute and the Due Process Clause. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–73, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). "In determining whether it can assert personal jurisdiction over a nonresident defendant in a diversity case, a district court must apply the law of the state in which it sits, subject to due process limitations." *Creech v. Roberts,* 908 F.2d 75, 79 (6th Cir.1990).

In this case, the following Ohio long-arm statute applies:

A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

. . . .

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury by an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

* * * * *

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

Ohio Rev.Code § 2307.382(A)(3), (4), (6), & (7). Sections 2307.382(A)(3), (6) and (7) each provide the basis for specific personal jurisdiction. Section 2307.382(A)(4) allows for the exercise of general jurisdiction. The district court held that the Ohio's statute's reach allows for specific personal jurisdiction over PPC and McCurry. (Pursuant to § 2307.382(A)(3) and (6)). However, the court found that jurisdiction would violate due process in this case. (This seems a bit odd on its face since the Ohio long-arm statute has been held to extend only to the limits of the due process clause. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1167 (6th Cir.1988); *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir.1972)). The court relied on the fact that Conti alleged that he suffered an injury in Ohio, because he detrimentally relied on fraudulent misrepresentations made by PPC both in Ohio and on his trips to Florida. McCurry is alleged to have made misrepresentations personally to Conti, and Conti suffered a tortious injury in Ohio as a result. Neither party really contests the district court's contention that the Ohio statute supports jurisdiction here. The issue before us, then, is whether the exercise of personal jurisdiction in this case would comport with the constitutional requirements of due process.

Due process requires that in order for a court to exercise personal jurisdiction over a defendant, the defendant must have certain minimum contacts with the jurisdiction such that maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The Supreme Court has discussed the purpose of the due process requirements as follows:

> By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

*Burger King*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring) and *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). This "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities toward the forum state and the alleged injuries "arise out of or relate to" those activities. *Ibid.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)).

In determining whether personal jurisdiction exists, then, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Id.* at 474, 105 S.Ct. at 2183. In other words, the defendant's conduct and connection with the forum state must be such that he should "reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. There must be some act "by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Further, even a single act can support jurisdiction as long as it creates the required relationship with the forum state. *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

Finally, the Supreme Court has also held that apart from the minimum contacts analysis, a court may also consider other factors to determine whether the exercise of personal jurisdiction would be consistent with the "fair play and substantial justice" requirement of *International Shoe*. *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184. There are certain considerations, for instance, that could sometimes establish jurisdiction on a lesser showing of minimum contacts than would otherwise be re-

quired. *Id.* at 477, 105 S.Ct. at 2184. These factors include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interests of the several states in furthering substantive social policies. *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564. Similarly, the concept of "fair play and substantial justice" may defeat jurisdiction where a defendant has purposely engaged in forum activities, but such a showing will normally be quite difficult. *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2184–85.

Historically, this Circuit has applied the following criteria in determining whether personal jurisdiction has been properly exercised by a district court:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indust.,* 401 F.2d 374, 381 (6th Cir.1968). The statement in *Mohasco* still accurately summarizes the law in this area. As we have stated on many previous occasions, "[p]urposeful availment by the defendant of the privilege of acting in, or causing consequence in, the forum state is 'the *sine qua non of in personam* jurisdiction.'" *Theunissen,* 935 F.2d at 1461 (quoting *Mohasco,* 401 F.2d at 381–382). Further, an inference of reasonableness arises when the first two criteria of the test are met. Once the first two criteria are met, therefore, only the most unusual case will fail to meet the third criterion also. *American Greetings,* 839 F.2d at 1170; *Theunissen,* 935 F.2d at 1461.

III

In this case, the judge granted the motion to dismiss without holding an evidentiary hearing. The court did, however, allow the parties to take some discovery and it did consider three depositions as well as certain documentary evidence as part of the motion to dismiss. In this Circuit, where a court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal. *Theunissen,* 935 F.2d at 1458. Further, the pleadings are to be considered in a light most favorable to the plaintiff. *Id.* at 1459. However, in sharp contrast to the summary judgment procedure, the court does not weigh the controverting assertions of the party seeking dismissal by 12(b)(2) motion. PPC claims that since some discovery was taken, the standard should be stricter, and that Conti should be required to prove jurisdiction by a preponderance of the evidence. However, a showing by a preponderance of the evidence is not necessary unless the trial court conducts an evidentiary hearing. *American Greetings,* 839 F.2d at 1169. Conti must only make a prima facie showing of jurisdiction and that evidentiary burden "is relatively slight." *Ibid.*

The district court held that personal jurisdiction could not be constitutionally exercised in this case because the defendants' contact with Ohio in this case were "random, fortuitous, and attenuated," and therefore failed to meet the first part of the *Mohasco* test. The court found that PPC and McCurry did not purposely recruit an Ohio resident to fill the position. Instead, the defendants used a Florida recruiting firm and would never have heard of Conti had he not sent a resume to the recruiter.

Further, the district court held that the plaintiffs failed to meet the second part of the *Mohasco* test, which requires that the cause of action arise from the defendants' activities in the forum state. The district court recognized that this part of the test does not require that the cause of action formally arise from the defendants' con-

duct within the forum, but requires only that the cause of action have "a substantial connection with the defendants' in-state activities." *Mohasco,* 401 F.2d at 384, n. 27. The district court held, however, that it doubted "whether the plaintiff could reasonably rely on any representations made by Management Recruiters regarding Pneumatic's financial condition and whether Management Recruiters was authorized to make such representations on behalf of Pneumatic." As I will show, these are precisely the type of substantive conclusions prohibited in a jurisdictional analysis at this preliminary stage of litigation. The district court clearly did not accept the pleadings in a light most favorable to the plaintiffs.

Conti argues persuasively that the district court failed to consider the evidence in a light most favorable to the plaintiff. Conti maintains that the district court erred when it concluded that exercising personal jurisdiction over the defendants would be unconstitutional. PPC knowingly authorized its agent, Management Recruiters, to make representations, give inducements, and engage in contract negotiations with Conti. When it contacted Management Recruiters, PPC knew that the company would look outside of Florida for a candidate to fill the position. PPC had actual knowledge that Conti was being solicited in Ohio and that certain representations were being made to him. After the interviews, PPC used Management Recruiters to convey job offer proposals and to negotiate details of the employment contracts. These negotiations occurred by telephone to Conti in Ohio. Conti points out that a principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud. *American Bankers Life Assur. Co. v. Tri City Bank & Trust Co.,* 677 F.2d 28, 30 (6th Cir.1982). Conti claims that the fact that PPC's president, McCurry, repeated the fraudulent representation when Conti arrived in Florida confirms that he and PPC intended the tortious conduct and its consequences. PPC confirmed the au-

thority of Management Recruiters to negotiate with Conti by issuing confirming letters to Conti in Ohio. PPC, on its own and through its agent, purposefully acted in Ohio. Conti maintains that it would be reasonable, therefore, to subject PPC and McCurry to the jurisdiction of the federal district court in Ohio.

In addition, Conti argues that the court erred when it ruled that "the defendants never directly contacted the plaintiff while he was in Ohio prior to hiring him." First, PPC directly coordinated travel arrangements for Conti to leave Ohio for the interviews, purchased tickets and mailed them directly to Ohio, and mailed contract proposals and employment-related materials directly to Conti in Ohio. There were several letters sent to Conti confirming contract proposals. There were also various telephone discussions. Further, Conti was on PPC's payroll in Ohio for the first month of their employment relationship. In no sense, says Conti, were the defendants' contacts "random, fortuitous, or attenuated." Rather, the contacts in Ohio were the product of a conscious decision to solicit Conti in Ohio and induce him to go to Florida.

Finally, Conti also argues that in addition to the above reasons for "specific" personal jurisdiction over the defendants arising out of their activities in this case, the court also had "general" jurisdiction over the defendants arising from the regular and systematic course of business in Ohio. Thus, Conti maintains that even apart from the Ohio-related acts of the defendants in connection with recruiting him, PPC has had constant, well-established and longstanding commercial ties to Ohio. Therefore, there would be nothing unfair about asserting jurisdiction over the defendants. *Hoover v. Recreation Equipment Corp.,* 763 F.Supp. 210, 215 (N.D.Ohio 1989).

The defendants argue that the district court correctly determined that personal jurisdiction could not be exercised in this case.

IV

Under *Theunissen,* we must view the pleadings in this case in a light most favor-

able to Conti without considering the controverting assertions of PPC and McCurry. Given this standard, the record would support a constitutional exercise of personal jurisdiction by the district court under the Ohio long-arm statute. The defendants' contacts with Conti in Ohio surpass the contacts with the forum state in other cases addressed by this court where an exercise of personal jurisdiction was found to be consistent with the requirements of the Due Process Clause. A consideration of one of these cases will establish this point.

*Lanier v. American Board of Endodontics,* 843 F.2d 901 (6th Cir.1988), for example, involved a Michigan dentist who sought certification from the American Board of Endodontics. She wrote for an application to the Board's headquarters in Chicago, completed the application, and then sent it back with the required fee. Later she took a written exam in Chicago and an oral test in Arizona. She failed the oral test and later took it a second time in Chicago. After she failed again, she filed a sex discrimination suit in Michigan and the defendants removed the case to federal court. The district court found that jurisdiction existed under the relevant Michigan long-arm statute and that the exercise of personal jurisdiction over the Board would not offend the constitution. It is clear that the contacts of the defendant in *Lanier* with the state of Michigan were more tenuous than those in the present case. However, they were held to be sufficient under the Due Process Clause to support personal jurisdiction.

The district court in this case apparently focused on a type of "but for" analysis, contending that none of the events would have happened if Conti had not sent his resume to the headhunter in Florida. However, we held in *Lanier* that the "question of which party solicited the business interface is irrelevant, so long as defendant then directed its activities to the forum resident." *Id.* at 910. The fact that the events in this case would probably not have taken place if Conti had not sent his resume to Management Recruiters is irrelevant. PPC and McCurry, directly and

through their agent, purposely availed themselves of conducting business in Ohio by clearly and consistently soliciting Conti's services.

The district court's flawed analysis is clearly revealed by its own language. The court held that the defendants contacts with the state of Ohio were "random, fortuitous, and attenuated" because "the defendants did not purposely recruit an Ohio resident to fill the position...." It is true that on one level the fact that this case involves a citizen of Ohio rather than of another state is fortuitous. PPC simply asked Management Recruiters to find someone to fill a position; it did not specifically request an Ohio resident. However, PPC knew that Management Recruiters would not confine its search to Florida, but would also look to other states to find a candidate.

Further, once Management Recruiters located Conti, both Management Recruiters and PPC certainly purposefully directed their activity to Conti in Ohio. There is no way that we can say that after a candidate was located, the actions of the defendants in this case were randomly directed at that candidate. The defendants located Conti and went after him quite purposefully and, ultimately, quite effectively. This case is directly analogous to a situation where the producer of a product offers it for mail-order sale nationwide. If someone in California chooses to buy it, we might say that in one sense it was random that a citizen of California ordered the product rather than someone in one of the other forty-nine states. However, if the product causes injury to the California purchaser, the Due Process Clause would not prevent jurisdiction and certainly not on the grounds that the defendant's conduct with the state was random and fortuitous. The district court's conclusion simply makes no sense given the facts of the case.

The district court's problematic logic is further illustrated by its statement that

> it is difficult to conclude that the defendants purposely caused consequences in Ohio by inducing the plaintiff to accept

their offer of employment because the plaintiff had already decided to leave his job in Ohio and had already accepted another job offer in Michigan at the time he was hired by the defendants. Therefore, we find that the defendants did not purposely avail themselves of the privilege of acting or causing consequence in Ohio, and that this Court lacks personal jurisdiction over the defendant.

To state this argument is to refute it. The whole point of this case is the allegation that the defendants' fraudulent misrepresentations in Ohio caused Conti to revoke his acceptance of the General Dynamics job in favor of the PPC position. In other words, the court has cited the direct consequence of the defendants' purposeful actions in Ohio as an argument for the proposition that the defendants did not act purposefully in Ohio.

It is clear that the defendants accepted the possibility of conducting business in Ohio, if the search by Management Recruiters revealed that it was possible to solicit an attractive candidate from Ohio. Once Conti was located, the defendants clearly, purposefully, and continuously directed their activity toward Ohio from the time of preliminary contacts with Conti, throughout the negotiation process, and until the contract was formally accepted and Conti was on PPC's payroll.

The defendants further claim that any calls made into Ohio were not sufficient to support jurisdiction. The defendants cite *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990), for support. In *LAK*, a Michigan citizen sent an unsolicited inquiry to an Indiana firm about purchasing land in Florida. The parties met in Florida, where the Michigan citizen signed a letter of intent to purchase the land. They had several subsequent meetings in Florida. They spoke over the telephone while the plaintiff was in Michigan, but no substantial negotiations were conducted over the phone. The final contract was eventually signed in Indiana. The court found that none of the fraudulent misrepresentations had been made in Michigan and that jurisdiction did not exist under the Michigan long-arm statute.

*LAK* is thus fairly easily distinguishable from the facts before us today. In the instant case, significant negotiations, including all of the initial persuasion that led Conti to go to Florida for interviews, took place through phone calls and mailings to Conti in Ohio. In *LAK*, the entire transaction took place out of the state, with only a few details handled in a couple of subsequent phone calls. None of the allegedly fraudulent conduct in *LAK* took place in those phone calls. *LAK* is therefore inapposite. This court has emphasized the words of the Supreme Court in *Burger King*:

> Jurisdiction ... may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable forseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, [physical absence is not dispositive].

*Lanier*, 843 F.2d at 907 (quoting *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184).

In this case, PPC and McCurry purposely availed themselves of the privilege of acting in Ohio. The fact that much or most of their purposeful activity directed at Conti took place through their agent, Management Recruiters, cannot shield them from any liability in Ohio that might arise from their activities in the state. This case is somewhat analogous to other cases in our Circuit involving the use by a manufacturer of an independent distributor to conduct its business in a forum state. We have held that the use of an independent distributor so that the manufacturer is only indirectly responsible for transacting business in the forum state "will not insulate a

nonresident foreign corporation from suit." *Poyner v. Erma Werke GmbH*, 618 F.2d 1186, 1190 (6th Cir.1980).

The more recent case of *Mott v. Schelling*, 966 F.2d 1453 (6th Cir.1992) (unpublished), involved an Austrian partnership, Schelling and Company, that used an independent distributor in Alabama to sell its products in the United States. Schelling manufactured industrial saws. The company would send a saw to its distributor in Alabama and the distributor would deliver the saw to the ultimate customer. Title to the saw would pass to the distributor as part of the transaction. One of these saws was sold by the Alabama distributor to a Michigan corporation, where it caused injury. In *Schelling*, we held that the Due Process Clause did not prevent a district court from exercising jurisdiction under the Michigan long-arm statute, even though Schelling acted in the forum state through an agent. Thus, the fact that the defendants in this case employed Management Recruiters to act for them, rather than conducting all of their activity directed toward Conti themselves, is not dispositive of and is probably irrelevant to the jurisdictional question we face in this case.

### V

In sum, I would reverse the summary judgment granted by the district court because, construing the facts in a light most favorable to the plaintiff, Conti has made a prima facie showing of specific personal jurisdiction. PPC and McCurry have purposely acted in Ohio and may have caused injury to Conti as a result of those actions. Given the record before us, an exercise of personal jurisdiction over the defendants would be reasonable and, therefore, constitutional.

The district court did not conduct the proper jurisdictional analysis given the preliminary stage of these proceedings. That court did not construe the facts in this case in a light most favorable to Conti without considering the contrary assertions of the defendants. I fear that this court had made the same mistake. As a result this court had thrown Conti out of court on jurisdictional grounds at the earliest stage in his case. Given the facts before us and the proper analysis of those facts, I would allow the district court to exercise jurisdiction so that this case could proceed. As the facts became clearer with the progression of litigation, the district court, in response to a motion by the defendants or sua sponte, could dismiss the case at any time if it became apparent that the facts would not support a constitutional exercise of personal jurisdiction. However, the nascent record before us certainly allows specific personal jurisdiction consistent with due process.

In addition, these facts and the Ohio statute might also support an exercise of general jurisdiction, but such an argument is unnecessary under my analysis. However, PPC's fairly substantial business presence in Ohio would only support the reasonableness of an exercise of personal jurisdiction over the company, not McCurry. Because I disagree with the majority's conclusion that personal jurisdiction cannot constitutionally be exercised by the district court at this early stage in this case, I respectfully dissent.