**Rich FARR, Plaintiff,**

v.

**SPATIAL TECHNOLOGY, INCORPORATED, Defendant.**

**Civ. A. No. C–1–92–606.**

United States District Court, S.D. Ohio, W.D.

March 2, 1993.

Paul Henry Tobias, Willard L. Harvey, Tobias & Kraus, Cincinnati, OH, for plaintiff.

Bill Schoeberlein, Denver, CO, Raymond Neusch, Cincinnati, OH, William Schoeberlein, Harding & Ogborn, Denver, CO, for defendant.

## REPORT AND RECOMMENDATION

SHERMAN, United States Magistrate Judge.

This diversity action for defamation and breach of contract arises from plaintiff Rich Farr's job termination by his employer, defendant Spatial Technology, a Delaware corporation with its principal place of business in Boulder, Colorado. On November 23, 1992 the Court heard oral argument on, and took under submission, defendant's motion to dismiss "for lack of jurisdiction over the person, insufficiency of service of process and improper venue" (doc. 2). *See also* doc. 4 (plaintiff's memorandum in opposition), doc. 5 (defendant's reply), and doc. 9 (plaintiff's surreply). Following oral argument, the Court ordered plaintiff to more fully address the issue of whether his two breach of contract claims arise from defendant's activities within Ohio and therefore satisfy the second prong of *Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968). Doc. 12 at 1. Both plaintiff and defendant have since briefed that issue, *see* docs. 13, 15, and the Court has fully reviewed those documents.

Defendant's motion is premised on two arguments: first, that plaintiff failed to perfect service of process in Colorado as authorized by Fed.R.Civ.P. 4; second, and in the alternative, that if service was properly made, neither personal jurisdiction nor venue lie in the Southern District of Ohio. For reasons that are made clear in § III below, these arguments are addressed in reverse order.

### I.

### *Personal Jurisdiction*

■ At the November 23rd hearing, neither party presented documentary evidence nor witness testimony, although both were advised beforehand of their right to do so and the Court's willingness to hear such evidence. Because an evidentiary hearing was thus not held, plaintiff—who has the burden of establishing personal jurisdiction over de-

fendant—need only show, by affidavit or otherwise, facts "which support a *prima facie* case for jurisdiction."[1] *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 980 (6th Cir. 1992); *accord Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). This burden has been characterized by the Sixth Circuit as "relatively slight." *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988). In determining whether plaintiff has satisfied his burden, the Court must construe each of plaintiff's pleadings and affidavits in the light most favorable to him, *Market/Media Research, Inc. v. Union–Tribune Publishing Co.,* 951 F.2d 102, 104 (6th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992), "notwithstanding [defendant's] contrary assertions." *Theunissen,* 935 F.2d at 1459.

So construing plaintiff's pleadings and affidavits, the Court determines, for purposes of this motion only, that the facts of this matter are as follows: plaintiff, an Ohio resident, was employed by Spatial at its Boulder, Colorado offices from November 1990 to October 1991. Doc. 4, exb. A (Farr. aff.) at 1, ¶ 3. Spatial is in the business of, *inter alia,* developing and marketing computer software. In March 1991, Structural Dynamics Research Corp. (SDRC), an Ohio corporation, agreed to sell Spatial's software to third parties. Doc. 9, exb. B (SDRC contract) at 1, § II(A). The immediate impact of the parties' contract was substantial; it accounted for approximately twenty-five percent of Spatial's 1991 gross revenue. Farr aff. at 1, ¶ 5. To service the contract, plaintiff, or Spatial employees working under his supervision, travelled to SDRC's Ohio offices on approximately twelve occasions, *id.* at 1, ¶ 6, and various Spatial employees conducted bi-weekly telephone conferences with SDRC. Doc. 4, exb. B (Stay aff.) at 1, ¶ 4. (It was on one such telephone conference call that Spatial's president, John Rowley, allegedly defamed plaintiff. *See id.* at 1–2, ¶¶ 6, 7.) During 1991, Spatial's agents or employees also attempted to obtain other Ohio sales agents and customers for its software products, by either contacting those agents and customers directly, or by mailing them promotional mate-

---

1. Had the Court held an evidentiary hearing, plaintiff's burden would have risen to the "pre- ponderance of the evidence" standard. *American Greetings, infra,* 839 F.2d at 1169.

rials. Farr aff. at 2, ¶¶ 7, 8. In October and November 1991, plaintiff, while still a Spatial employee, used his Ohio home (from which his family had never moved) as his office. *Id.*, ¶¶ 9, 11. Plaintiff's employment with Spatial was terminated on November 29, 1991. Doc. 1 at 1.

### A

As explained in *Conti:*

... To subject a defendant to the personal jurisdiction of a court, the defendant must "have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In analyzing the due process limits of personal jurisdiction, a distinction is made between 'general' jurisdiction and 'specific' jurisdiction.

A proper exercise of general jurisdiction requires the defendant's contacts with the forum state to be of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.... [S]pecific jurisdiction[,] [on the other hand,] is exercised over a defendant in a suit arising out of or related to the defendant's contacts with the forum.

977 F.2d at 981 (citations and internal quotations deleted in part; brackets added and deleted).

■ Nowhere in his memorandum in opposition does plaintiff argue that defendant is subject to the *general* personal jurisdiction of the Court. Similarly, in his surreply memorandum, plaintiff makes just passing reference to Ohio's general personal jurisdiction statute, Ohio Rev.Code § 2307.382(A)(4). *See Conti,* 977 F.2d at 986 (Boggs, J., dissenting); *see also Creech v. Roberts,* 908 F.2d 75, 79 (6th Cir.1990), *cert. denied,* 499 U.S. 975, 111 S.Ct. 1619, 113 L.Ed.2d 717 (1991) (requiring district courts, when resolving issues of personal jurisdiction presented in diversity cases, to apply the law of the forum). Although, in light of the above facts, such jurisdiction may in fact here exist, *see*

*Conti,* 977 F.2d at 981 (describing the "continuous and systematic" contacts test), the Court declines to address that issue *sua sponte.*

### B

With regard to *specific* personal jurisdiction, plaintiff must prove, for each of his claims, that defendant satisfies both the Ohio long-arm statute and the Fourteenth Amendment's Due Process Clause. *Theunissen, supra,* 935 F.2d at 1459, 1462; *see also* Ohio Rev.Code § 2307.382(C).

■ The relevant provisions of Ohio's long-arm statute are as follows:

As used [here,] "person" includes ... a corporation ... or any other legal or commercial entity, who is a nonresident of this state.

\*　　\*　　\*　　\*　　\*　　\*

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state; [or]

\*　　\*　　\*　　\*　　\*　　\*

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state[.]

Ohio Rev.Code §§ 2307.381, 2307.382(A). In the Court's view, plaintiff satisfies these statutory provisions by his *prima facie* burden, if not more. As to his defamation claim sounding in tort, for example, § 2307.382(A)(6) is met since the subject phone call was, plaintiff claims, made outside the state (*i.e.,* in Colorado), for the purpose of injuring him, and with the reasonable expectation of causing such injury within Ohio, where the call was received. *Compare Reynolds v. International Amateur Athletic Fed'n,* 841 F.Supp. 1444, 1451 (S.D.Ohio 1992). With respect to his two breach of contract claims, § 2307.-

382(A)(1) is satisfied because, by having SDRC act as defendant's Ohio sales representative in order to solicit computer software orders here, defendant was "transacting any business" in Ohio. Ohio Rev.Code § 2307.382(B); *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75–76, 559 N.E.2d 477, 480 (1990), *cert. denied*, 499 U.S. 975, 111 S.Ct. 1619, 113 L.Ed.2d 717 (1991). The same facts also demonstrate, under § 2307.382(A)(2), that defendant contracted with SDRC "to supply services or goods" within Ohio. *Compare Cincinnati Milacron Indus., Inc. v. Aqua Dyne, Inc.*, 592 F.Supp. 1113, 1116 (S.D.Ohio 1984). For those reasons, the Ohio long-arm statute is satisfied both as to plaintiff's tort and breach of contract claims. Thus, the Court need next determine whether defendant's contacts with Ohio were purposeful enough to satisfy the Due Process Clause minimum contacts requirement; that is, whether defendant was provided "fair warning" that its conduct might "subject [it] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985).

### C

■ Both parties agree, as does the Court, that the relevant due process analysis is set out in *Southern Machine, supra*, 401 F.2d at 381, which establishes the following three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

With regard to the first of these criteria— *i.e.*, the "purposeful availment" requirement—due process is satisfied if defendant's contacts amount to a "substantial connection" with the forum. *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183. Such is the case here.

Spatial not only contracted to sell its software to SDRC in Ohio, but sent its employees (including plaintiff) to Ohio on approximately twelve occasions to service that software, and conducted bi-weekly phone calls to Ohio for that purpose. In addition, when it became obvious that the SDRC contract was making significant profits for Spatial, Spatial sought out other Ohio customers by contacting them here. Moreover, Spatial consented to plaintiff performing the last two months of his employment in Ohio. Accordingly, the first *Southern Machine* prong is met.

■ The second *Southern Machine* prong, concerning the state in which plaintiff's three claims arose, is satisfied as well. As explained above, plaintiff's tort claim arose in Ohio, when defendant's agent Rowley allegedly defamed him in a telephone call placed from Colorado to here. *Compare Bernie v. Waterfront Ltd. Dividend Hous. Ass'n*, 614 F.Supp. 651, 656 (S.D.Ohio 1985). Similarly, both of plaintiff's breach of contract claims— *i.e.*, that Spatial (1) failed to pay him an agreed-upon bonus, and (2) terminated him so as not to have to provide him with certain stock option benefits vesting shortly thereafter, *see* doc. 1 at 3—arose during the time that plaintiff was, he claims, working for Spatial in Ohio. Doc. 13 at 1–2.

■ With respect to the third *Southern Machine* prong, that is, whether defendant's acts have a "substantial enough" connection with this forum to make the exercise of personal jurisdiction over defendant "reasonable," it is important to note that, once the first two *Southern Machine* prongs are met, "an inference of reasonableness arises ... and [ ] 'only the unusual case will not meet this third criterion.'" *Theunissen*, 935 F.2d at 1461 (quoting *American Greetings, supra*, 839 F.2d at 1170). Here, defendant's contract with Ohio-based SDRC accounted for a substantial amount of its 1991 revenue. For that reason, *see Onderik v. Morgan*, 897 F.2d 204, 208–09 (6th Cir.1989), and because defendant's conduct, as described, should have alerted it to the fact that it might well be subject to jurisdiction here, *Creech, supra*, 908 F.2d at 80, the third *Southern Machine* prong is also satisfied.

## II.

### *Venue*

 Having found the existence of personal jurisdiction over defendant in Ohio, the Court turns to defendant's argument that venue is nonetheless lacking here. Recognizing that: (1) diversity suits against corporate defendants may be brought in any judicial district for which the corporation is subject to personal jurisdiction, 28 U.S.C. § 1391(a)(1); (2) defendant's contacts are sufficient—for the reasons explained above—to subject it to the jurisdiction of the Southern District of Ohio, were this district a separate State, *see id.,* § 1391(c); and (3) defendant's "most significant" contacts within the Southern District are with Hamilton and Clermont counties, where SDRC is located in the town of Milford, Ohio, *see* SDRC contract at 1, the Court finds this action properly venued in Cincinnati. S.D.Ohio L.R. 3.3(b), (d). Defendant's venue argument is therefore without merit.

## III.

### *Service of Process*

As the Court reads the documents before it, plaintiff initially attempted to serve defendant, a domestic corporation for purposes of Fed.R.Civ.P. 4(d)(3), by mail as authorized by Rule 4(c)(2)(C)(ii). Defendant did not acknowledge service within twenty days, however. *See* doc. 2 at 3, ¶ 10. Accordingly, and pursuant to Rules 4(c)(2)(C)(ii) and 4(c)(2)(A), plaintiff was required to personally serve defendant's "officer, [ ] managing or general agent, or ... other agent authorized by appointment or by law to receive service of process...." Rule 4(d)(3). *See Friedman v. Estate of Presser,* 929 F.2d 1151, 1156 (6th Cir.1991). On August 28, 1992, plaintiff therefore had a process server personally serve defendant at its Boulder, Colorado offices. Doc. 2 at 2, ¶ 2. Defendant, citing Rule 4(f), contends that this latter service

was defective because it took place outside Ohio.

The Court agrees with the result of defendant's argument, but not with defendant's logic. While Rule 4(f) does limit service of process to the "territorial limits of the state in which the district court is held," the Rule also permits service beyond those borders when such service is "authorized by a statute of the United States or by these rules." Neither party suggests that a federal law is operative here, and the Court agrees. With respect to the Federal Rules, Rule 4(e) authorizes extraterritorial service. But 4(e) also imposes conditions upon such service; the service must be authorized by (1) federal statute, (2) "an order of court thereunder," or (3) a statute or court rule "of the state in which the district court is held." No federal law is determinative of this issue. Neither is an existing federal court Order nor state law. The merits of defendant's service thus turn on Ohio's state court rules. *General Envtl. Science Corp. v. Horsfall,* 753 F.Supp. 664, 672 (N.D.Ohio 1990).

Ohio Rule of Civil Procedure 4.3(B)(2), the relevant state court rule providing for the personal service of out-of-state parties, reads in relevant part:

> When ordered by the court, a "person" as defined in subdivision (A) of this rule may be personally served with a copy of the process and complaint or other document to be served.

Rule 4.3(B)(2) thus imposes two requirements: (1) the party to be served must be a "person" as defined; and (2) the personal service must be by court Order.[2] Defendant meets the first test because it is a nonresident corporation which, acting within Ohio and via its agents, supposedly transacted "any business" here, contracted "to supply services or goods" here, and defamed plaintiff here. Ohio R.Civ.P. 4.3(A)(1), (A)(2), (A)(9); *see supra,* § I(B) (discussion of Ohio

---

**2.** As a reading of Ohio R.Civ.P. 4.3(B)(2) reveals, it is unclear which courts may issue the Service-of–Process–Orders addressed by the Rule. Because the Rule concerns state civil procedure, it goes without saying that the issuing body must be a state, not federal, court. Once federal courts issue such Orders, the requirements of state court rules like 4.3(B)(2) become, for purposes of federal service of process analysis, simply irrelevant. *See* Fed.R.Civ.P. 4(e) (authorizing extraterritorial, personal service of process pursuant to a "statute of the United States or *an order of court thereunder* ...") (emphasis provided).

long-arm statute relative to plaintiff's tort and breach of contract claims). But defendant fails the second test, because its personal service in Colorado was not done pursuant to a court Order. *Korb v. P.F.R. Corp.*, 101 F.R.D. 56, 58 (S.D.Ohio 1984).

### IV.

Recognizing, in light of the above, that personal jurisdiction over defendant lies in Ohio, specifically the Southern District; that venue is proper in Cincinnati; and that plaintiff's sole attempt to personally serve defendant fails to comply with Fed.R.Civ.P. 4(e), the Court **RECOMMENDS** that:

(1) Defendant's motion to dismiss (doc. 2) be **DENIED** on personal jurisdiction and venue grounds; and

(2) The motion be **GRANTED** on service of process grounds and this case therefore **DISMISSED** on **CONDITION** that, if plaintiff perfects defendant's service within thirty days, the Court will **REOPEN** the case and proceed accordingly.