995 F.2d 1066
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DIAMOND CLUB d/b/a Yesterday's-Jennie Krynzel, Plaintiff-Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.
 No. 91-3277.
 United States Court of Appeals, Sixth Circuit.
 May 20, 1993.
 
 Before MILBURN, NELSON and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Diamond Club, Inc., d/b/a Yesterday's--Jennie Krynzel ("Diamond Club"), appeals from a judgment for defendant, Insurance Company of North America ("INA"), in this diversity action to recover for a fire loss under an insurance policy issued by INA. On appeal, the issues in this case are (1) whether the district court abused its discretion by waiting approximately eight and one-half years from the trial date to render a decision, and (2) whether the district court applied the proper legal standards for determining when an arson by a corporate officer and a concealment of material information bearing on the arson by that officer may be imputed to the corporation for purposes of barring the corporation's recovery under a fire insurance policy. For the reasons that follow, we affirm.
 
 I.
 
 2
 The facts are not disputed. Diamond Club began operating a nightclub in 1962. Jennie Krynzel was at all times the president of the corporation. As the sole shareholder of the corporation, she installed her children in the other officers' positions in the corporation. In particular, her son, Dan Krynzel, became vice-president of the corporation at some point in time, and he held that position at all times material to this case.
 
 
 3
 Around 1968, Jennie Krynzel transferred approximately one-third of her stock in Diamond Club to her son, Dan. However, in 1970, Dan Krynzel transferred the stock back to his mother to keep it from becoming entangled in his divorce proceeding. From 1970 until the corporation's main asset was destroyed by fire on August 4, 1979, Jennie Krynzel was the sole shareholder in the corporation.
 
 
 4
 In 1978, a decision was made to convert Diamond Club from a nightclub into a restaurant/discotheque. When the new enterprise opened in May 1978, Jennie Krynzel and her son, Dan, ran the business together. Jennie Krynzel opened the restaurant in the morning and acted as hostess until lunch. She returned to work about 5:00 p.m. Dan Krynzel acted as host during the evening. He also did the hiring, "most of the firing," and the ordering of liquor and food. Jennie Krynzel paid all the bills, made the deposits, and wrote and signed the payroll checks.
 
 
 5
 In addition to his daily duties in running the restaurant, Dan Krynzel arranged the loans necessary to renovate and redecorate the nightclub in 1978 to transform it into Yesterday's. He signed for, and then personally guaranteed, a $185,000 loan from Homestead Federal Savings and Loan and the Small Business Administration. He also personally guaranteed other substantial corporation debts to Third National Bank and Michael's Finer Meats.
 
 
 6
 Based on the foregoing facts, the district court specifically found that "Dan Krynzel had, at a minimum, a substantial role in the management of the corporation's affairs ..." and that "Dan's role in the running of the business was at least equal to Jennie's." J.A. 203. There is evidence in the record that Dan Krynzel was also a director of the corporation in 1978, although the district court did not mention this in its findings.
 
 
 7
 Yesterday's did not prosper as a business, and when it burned on August 4, 1979, Diamond Club was experiencing significant cash flow problems and owed substantial sums of money to creditors. On August 4, 1979, Yesterday's closed between 2:30 and 3:00 a.m. when Dan Krynzel locked the doors and left with the last group of employees. Dan Krynzel and his wife, Tina, were to accompany Tom Bateman to his home for drinks. After traveling some distance from the restaurant toward Bateman's home, the group decided that Bateman and Krynzel should return to Yesterday's to get whiskey and sandwiches while Tina Krynzel drove on in another vehicle to Bateman's house. Accordingly, Krynzel and Bateman returned to the restaurant sometime between 2:50 and 3:15 a.m. At 3:53 a.m., the Dayton Fire Department received an alarm of a fire at Yesterday's. The fire was extinguished at approximately 4:15 a.m., and subsequent tests showed that the fire had been burning for at least 46 minutes by the time it was extinguished. The district court found as a fact that the fire was of incendiary origin and that the fire was started by Dan Krynzel or with his complicity. This finding of fact is not challenged on appeal.
 
 
 8
 When Dan Krynzel was interviewed by a police detective and an arson specialist hired by INA, he told them that he closed and left Yesterday's with his wife at 3:00 a.m. He did not mention returning to the restaurant with Bateman shortly before the fire must have occurred.
 
 
 9
 Plaintiff filed this action in the Court of Common Pleas, Montgomery County, Ohio, from which it was removed to the district court. The case was tried to the court without a jury and was concluded on August 30, 1982. The court ordered a transcript of the trial proceedings on November 1, 1989, and received it from the court reporter on January 18, 1991. Thereafter, on February 19, 1991, the district court rendered judgment for the defendant, and this timely appeal followed.
 
 
 10
 When the appeal first came before this court, we determined that the dearth of Ohio law concerning the proper standard to use for determining when an arson of a corporate officer may be imputed to a corporation made it advisable to certify the question to the Ohio Supreme Court. Accordingly, we certified the question which, if answered by the Ohio Supreme Court, would have established the law of Ohio in this regard. Unfortunately, counsel for the appellant failed to follow the published rules of the Ohio Supreme Court governing certified questions, and his failure resulted in the dismissal by the Ohio Supreme Court of our certified question for failure to prosecute.[1] The case is now back before us for decision.
 
 II.
 A.
 
 11
 Plaintiff argues that the district court abused its discretion in waiting approximately eight and one-half years from the trial of the case before rendering a decision. This issue was raised for the first time on appeal, and we note that plaintiff failed to take any action whatever in the district court to obtain a speedier decision in this case.
 
 
 12
 Of the cases that have considered claims of this kind, most hold that a district court's delay in deciding a case does not constitute grounds for a new trial. In Phonetele v. American Telephone & Telegraph Co., 889 F.2d 224, 232 (9th Cir.1989), cert. denied, 112 S.Ct. 1283 (1992), the Ninth Circuit declined to reverse a judgment rendered after a four-year delay.
 
 
 13
 [W]e are appalled by the delay, but we are aware of no case holding that a district court commits reversible error by taking too long to decide a case. Indeed, we doubt that an appellate review could ever be an effective means of enforcing district court timeliness.... Phonetele suggests that the district court's delay is evidence of its disinterest in or ignorance of the case. Although we do not condone the long delay, we are not willing to assume without strong independent support that the district court departed from its proper role and considered only the evidence that was easiest to recall.
 
 
 14
 In Ciccarello v. Graham, 296 F.2d 858, 860 (5th Cir.1961), the Fifth Circuit reached a similar conclusion in a case involving a delay of only five months.
 
 
 15
 Moreover, in this case, plaintiff sat quietly by for the eight and one-half year period between the end of the trial and the entry of judgment. It filed no motion to expedite or motion for a new trial in the district court, and it took no action in this court to compel an earlier decision. A petition for a writ of mandamus brought under the All Writs Act, 28 U.S.C. § 1651(a), would have placed the issue of delay before this court, which unquestionably has the power to order the district court to proceed to judgment.
 
 
 16
 There can be no doubt, where a district court persistently and without reason refuses to adjudicate a case properly before it, the court of appeals may issue the writ "in order that [it] may exercise the jurisdiction of review given by law."
 
 
 17
 Will v. Calvert Fire Ins. Co., 437 U.S. 655, 661-62 (1978) (quoting Knickerbocker Ins. Co. v. Comstock, 83 U.S. 258, 270 (1872)).
 
 
 18
 Ordinarily, this court does not address issues which have not been raised in the district court. Taft Broadcasting Co. v. United States, 929 F.2d 240, 243-45 (6th Cir.1991). Because of plaintiff's inactivity, there is no suitable record from which this court can determine the reasons for the delay or the resulting prejudice, if any, that may have inured to the parties. Rather than speculate on the delay, its causes or effects, we hold that plaintiff has waived the issue although we too are appalled by and are unable to understand the district court's delay in deciding this case.
 
 B.
 
 19
 Plaintiff also argues that the district court committed an error of law when it held that Dan Krynzel's concealment of his return to the club near the time of the fire violated a term of the insurance policy and thereby relieved INA of any duty to pay its insured. This presents a question of state law which this court reviews de novo. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217 (1991).
 
 
 20
 The insurance policy in question contains the following condition:
 
 
 21
 This entire policy shall be void if the Insured has concealed or misrepresented in writing or otherwise any material facts or circumstances concerning this insurance on the subject thereof or if the Insured shall make any attempt to defraud the Company either before or after loss.
 
 
 22
 J.A. 200. Because this case was tried to the bench, the district court was required to make the factual findings in this case. It specifically found that Dan Krynzel was interviewed by Detective Spitler on August 5, 1979, and by Glenn Baker, a specialist hired by INA, on August 20, 1979. During these interviews, Dan Krynzel did not inform either Spitler or Baker (1) that Bateman was among the group that left at closing time on the night of the fire, or (2) that he and Bateman returned to the restaurant after they had closed it.
 
 
 23
 Plaintiff does not challenge these findings of fact, nor does it dispute the materiality of the information allegedly concealed by Dan Krynzel during his interviews with Baker and Spitler. Instead, plaintiff focuses its argument on the relationship between Dan Krynzel and the corporation, contending that the district court should have determined whether "Dan Krynzel's purported misrepresentation was consented to by the corporation." Brief of Appellant at 20. Plaintiff, therefore, seeks to frame the issue in terms of whether or not some form of corporate consent to Dan Krynzel's concealment was required before the concealment could be imputed from Dan Krynzel to the insured corporation.
 
 
 24
 Neither the parties nor the district court cite a single Ohio case bearing on this question. The district court, however, did conclude as a matter of law that "Dan Krynzel's actions are attributable to Diamond Club by virtue of his position in that corporation as well as by his substantial control over the management of the corporation." J.A. 218. Thus, the district court found that Krynzel's position as an officer of the corporation, together with his "substantial control" over the corporation, operated to make his concealment the concealment of the corporation.
 
 
 25
 Corporations, of course, are artificial persons, and as such they can act only through human agents. The officers of a corporation are its agents for many purposes, and where an agent acts within the course and scope of his employment, his actions are generally imputed to the corporation. This general proposition is recognized in the Restatement (Second) of Agency, § 261 (1958), which provides:
 
 
 26
 A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for fraud.
 
 
 27
 Comment a to the foregoing section explains the rationale behind it.
 
 
 28
 The principal is subject to liability under the rule stated in this Section although he is entirely innocent, has received no benefit from the transaction, and, as stated in Section 262, although the agent acted solely for his own purposes. Liability is based on the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him.
 
 
 29
 This court has previously relied on and applied the rule in section 261, albeit in tort cases involving actions for fraud. American Bankers Life Assurance Co. v. Tri City Bank & Trust Co., 677 F.2d 28, 30 (6th Cir.1982) (per curiam) (applying section 261 to make a bank liable for its loan officer's scheme to defraud a credit life insurance company); Hindman v. First Nat. Bank, 112 F. 931, 940 (6th Cir.), cert. denied, 186 U.S. 483 (1902) ("It is no answer to say that the bank did not authorize a false statement. That may be true. But ... it has 'put the agent in his place to do that class of acts, and it must be answerable....' ").
 
 
 30
 INA's defensive use of the doctrine is comparable, however, to its mode of employment of the doctrine in tort cases because the situation is not logically distinguishable from a hypothetical one in which INA paid the claim, then discovered Dan Krynzel's fraud and sued him and the corporation for a refund. In the latter case, the doctrine would clearly apply, and, therefore, it should in the former. Thus, many state cases hold that fraud or misrepresentation of an insured's agent regarding a proof of loss or matters incident thereto are imputable to the insured corporation. See M.T. Brunner, Annotation, Fraud or Misrepresentation by Insured's Agent after Loss as within Provision Avoiding Policy for Fraud or Attempted Fraud of Insured, 24 A.L.R.2d 1220 (1952); 18 Mark S. Rhodes, Couch on Insurance 2d, § 74:674 (1983).
 
 
 31
 In an analogous situation, the California Supreme Court imputed a concealment by the chief bookkeeper of a corporation to the insured corporation where the bookkeeper, having been told by the director of the corporation to disclose certain estimates of inventory destroyed by fire, failed to do so. The court found that the bookkeeper was acting within the scope of his employment when he concealed the estimates, and it imputed his concealment to the corporation. Stockton Combined Harvester & Agric. Works v. Glens Falls Ins. Co., 33 P. 633 (Cal.1893).
 
 
 32
 In the present case, Dan Krynzel was directly asked about his activities on the night of the fire, and he concealed the fact that he and Bateman returned alone to the restaurant after they had closed it for the night and shortly before the fire must have been set. Because Dan Krynzel acted within the course and scope of his duties as an officer of the corporation and manager of its restaurant when he conveyed critical information to the corporation's insurance carrier, his concealment of material information may be imputed to the corporation. Therefore, the plaintiff corporation breached the terms of its insurance contract with INA and forfeited its right to recover on the insurance policy.
 
 
 33
 The district court found, alternatively, that the corporation was barred from recovery because Dan Krynzel's arson could be attributed to the corporation by virtue of his position as an officer in the corporation and the degree of his control over the management of the corporation. Because the case can be affirmed on the concealment issue, it is unnecessary to decide whether the insured corporation is also barred from recovering by the arson of its officer.
 
 III.
 
 34
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 We published an order concerning the matter of the certification. See Diamond Club v. Insurance Company of North America, 984 F.2d 746 (6th Cir.1993)