. **Marcia N. COLE, Representative of the Estate of Joseph E. Cole, Plaintiff–Appellee,**

v.

**Nick J. MILETI, Defendant–Appellant.**

No. 96–4214.

United States Court of Appeals, Sixth Circuit.

Submitted Oct. 23, 1997.

Decided Jan. 8, 1998.

Joshua R. Cohen (briefed), Kohrman, Jackson & Krantz, Cleveland, OH, for Plaintiff–Appellee.

Albert A. Yannon (briefed), Hilliard, OH, for Defendant–Appellant.

Before: MERRITT, WELLFORD, and MOORE, Circuit Judges.

MERRITT, J., delivered the opinion of the court, in which MOORE, J., joined. WELLFORD, J. (pp. 438–39), delivered a separate dissenting opinion.

MERRITT, Circuit Judge.

In this diversity case, defendant Mileti appeals the Magistrate's judgment in favor of plaintiff Cole, arguing that the Magistrate, after improperly asserting personal jurisdiction over him, erroneously applied Ohio's statute of limitations to a breach of contract action governed by California law. We conclude that the Magistrate had jurisdiction over Mileti and properly applied Ohio's statute of limitations.

I.

This dispute arises from a surety agreement between defendant Mileti and plaintiff's decedent, Joseph Cole. In 1983, Mileti co-produced a motion picture with Robert Altman called "Streamers" and organized Streamers International Distributors, Inc., a California corporation, to purchase and distribute the film. Cole was an initial investor in the corporation. He purchased two hundred shares of Streamers stock, lent the corporation $475,000, and became one of its officers and directors. To fund his investment, Cole secured a loan from Equitable Bank of Baltimore. The film was not a success. Mileti offered to buy Cole's share of the corporation in exchange for Cole's resignation as an officer and director. Accordingly on September 4, 1984, the parties executed the surety agreement at issue in which Cole transferred his stock and indebtedness to Mileti, who in return agreed to repay the Bank by June 16, 1985.

Mileti and Cole were business associates in Cleveland, Ohio in the 1970s. In 1979, Mileti moved to California where he became a mov-ie producer. He was a California resident at all times relevant to the negotiation of this surety agreement. Cole continued to live in Cleveland throughout the Streamers project. He was therefore an Ohio resident when he executed this contract. When "Streamers" failed at the box office in early 1984, Mileti began negotiating with Cole to buy out his share of the corporation. On February 6, 1984, Cole's lawyer sent Mileti a written draft integrating their agreement. Thereafter, telephone calls concerning the September 4, 1984 agreement were exchanged between California and Ohio. The record also contains a letter dated August 17, 1984, that refers to these negotiations and to Cole's resignation. Mileti subsequently signed the contract in California and sent it back to Ohio, where Cole executed it. The parties agreed that the contract would "be governed and construed in accordance with the laws of the State of California."

Mileti failed to repay the loan by June 16, 1985, as required by the contract, so Cole continued to make sporadic payments to the Bank until 1992, when the Bank sued him to recover the balance. Cole settled that dispute with the Bank for $310,000. He eventually brought this diversity action in the Northern District of Ohio on May 24, 1994, nine years after the alleged breach. Cole's widow, Marcia Cole, was substituted as the plaintiff in this action after Cole died on January 8, 1995.

After the district court rejected Mileti's motion to dismiss this suit for lack of personal jurisdiction, the parties consented to the jurisdiction of a U.S. Magistrate and filed simultaneous motions for summary judgment. The Magistrate granted summary judgment to Ms. Cole after concluding that personal jurisdiction existed and finding that the action was not barred by California's four-year statute of limitations. On written stipulations, the Magistrate entered a final judgment against Mileti for damages of $988,861.89 and prejudgment interest of $470,728.66. Mileti appealed the Magistrate's judgment directly to this Court pursuant to 28 U.S.C. § 636(c)(3) and Fed.R.Civ.P. 73(c).

## II.

■ Mileti first argues that the Magistrate's assertion of personal jurisdiction over him was fundamentally unfair and therefore unconstitutional. To determine whether personal jurisdiction exists over a nonresident defendant, federal courts apply the law of the forum state, subject to the constitutional limits of due process. *CompuServe v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996); *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir.1991). The Magistrate below therefore properly applied the Ohio long-arm statute, which provides:

A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state. . . .

Ohio Rev.Code § 2307.382(A)(1). Although the Ohio Supreme Court recently held this portion of the statute does not reach to the limits of the Due Process Clause, *see Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541, 545 n. 1 (1994) (per curiam), our central inquiry is whether Mileti established certain minimum business contacts with Ohio so that the Magistrate's exercise of personal jurisdiction over him did not offend "traditional notions of fair play and substantial justice." *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ The Sixth Circuit has established a three-part test to determine whether specific jurisdiction exists over a nonresident defendant like Mileti. First, the defendant must purposefully avail himself of the privilege of conducting activities within the forum state; second, the cause of action must arise from the defendant's activities there; and third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make its exercise of jurisdiction over the defendant fundamentally fair. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 794 (6th Cir.1996); *Southern Machine Co. v. Mohasco Industries Inc.*, 401 F.2d 374, 381 (6th Cir.1968).

If, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 479, 105 S.Ct. 2174, 2183–84, 2185–86, 85 L.Ed.2d 528 (1985); *CompuServe*, 89 F.3d at 1263–64; *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir.1988); *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 228, 235 (6th Cir.1972). Furthermore, if the cause of action is for breach of that contract, as it is here, then the cause of action naturally arises from the defendant's activities in Ohio. *See CompuServe*, 89 F.3d at 1267; *In–Flight Devices*, 466 F.2d at 229. Finally, when we find that a defendant like Mileti purposefully availed himself of the forum and that the cause of action arose directly from that contact, we presume the specific assertion of personal jurisdiction was proper. *CompuServe*, 89 F.3d at 1268; *First National Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir.1982). In light of this precedent, we have no doubt that the Magistrate's assertion of jurisdiction over Mileti was fundamentally fair and constitutional. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); *CompuServe*, 89 F.3d at 1268; *In–Flight Devices*, 466 F.2d at 235–36; *Southern Machine*, 401 F.2d at 380.

## III.

■ A more complex issue arises from Mileti's claim that the Magistrate improperly applied Ohio's longer, rather than California's shorter, statute of limitations to this contract dispute, which is governed in substance by California law. We review this issue de novo. *Holmes v. Donovan*, 984 F.2d 732, 735 (6th Cir.1993).

Ohio law provides a fifteen-year statute of limitations for breach of a written contract. Ohio Rev.Code § 2305.06. California law provides a four-year statute of limitations. Cal. Civ.Proc.Code § 337. In addition, Ohio's now-repealed borrowing statute previously required courts sitting in Ohio to apply a

foreign state's statute of limitations if it was shorter than Ohio's, Ohio Rev.Code. § 2305.20, but the Ohio legislature got rid of that provision on November 5, 1965. *See Loughan v. Firestone Tire & Rubber Co.,* 624 F.2d 726, 729 & n. 9 (5th Cir.1980) (citing *Thigpen v. Greyhound Lines, Inc.,* 11 Ohio App.2d 179, 229 N.E.2d 107 (1967)).

■ It is well-established that federal courts sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Charash v. Oberlin College,* 14 F.3d 291, 296 (6th Cir.1994). Mileti does not dispute this proposition. Rather, he erroneously contends the Ohio courts have judicially preserved the effect of Ohio's old borrowing statute, notwithstanding the fact that the Ohio legislature repealed the statute over thirty years ago. Consequently, Mileti argues, Ohio's choice of law rules still required the Magistrate below to borrow California's shorter statute of limitations when it conflicted with Ohio's longer statute.

The Ohio Supreme Court has adopted the *Restatement (Second) of Conflict of Laws* as the governing law for Ohio conflicts issues. *Lewis v. Steinreich,* 73 Ohio St.3d 299, 652 N.E.2d 981, 984 (1995); *Morgan v. Biro Mfg. Co., Inc.,* 15 Ohio St.3d 339, 474 N.E.2d 286, 288–89 (1984). When a conflict arises between two states' statutes of limitations, the *Restatement* provides:

> An action will be maintained if it is not barred by the statute of limitations of the forum, even though it would be barred by the statute of limitations of another state.

*Restatement (Second) of Conflict of Laws* § 142(2). Section 142(2) thus requires Ohio courts to apply Ohio's statute of limitations to breach of contract actions brought in Ohio, even if the action would be time-barred in another state. *See Males v. W.E. Gates & Associates,* 29 Ohio Misc.2d 13, 504 N.E.2d 494, 494–95 (Ohio Com.Pl.1985) (applying Ohio's fifteen-year statute of limitations to a breach of contract action that would have been barred by Virginia's five-year statute); *cf. Mahalsky v. Salem Tool Co.,* 461 F.2d 581, 586 (6th Cir.1972) (holding this rule does not deny full faith and credit); *Mackey v.*

*Judy's Foods, Inc.,* 867 F.2d 325, 328–29 (6th Cir.1989) (affirming the district court's application of a similar rule in Tennessee). There is no question that this rule is both fair and constitutional. *See Sun Oil Co. v. Wortman,* 486 U.S. 717, 722, 108 S.Ct. 2117, 2121, 100 L.Ed.2d 743 (1988) ("[T]he Constitution does not bar application of the forum State's statute of limitations to claims that in their substance are and must be governed by the law of a different State."); *Charash,* 14 F.3d at 299.

Accordingly, given the repeal of Ohio's borrowing statute, the Magistrate properly applied Ohio's statute of limitations to allow Cole's action for breach of contract, even though California law would have barred the same claims. Mileti argues, however, that Sixth Circuit precedent compels the opposite conclusion. Citing dicta from *Phelps v. McClellan,* 30 F.3d 658 (6th Cir.1994), he argues the law in this Circuit says that the Ohio common law has preserved the Ohio borrowing statute. Admittedly, *Phelps* did contain language to that effect, *id.* at 661–62, but that language was unnecessary to the resolution of *Phelps* because Ohio's statute was shorter, not longer, than the conflicting state's. Furthermore, in this dicta our Court in *Phelps* apparently overlooked the fact that the Ohio legislature repealed its borrowing statute over thirty years ago and that the Ohio Supreme Court had replaced that rule with § 142(2) of the *Restatement (Second) of Conflict of Laws.* The decision below properly followed the requirements of § 142(2).

■ Finally, Mileti argues that the Magistrate below should have applied California's statute of limitations because the parties chose California law to govern their contract. Sixth Circuit precedent provides otherwise. In two recent cases we have held that contractual choice-of-law clauses incorporate only substantive law, not procedural provisions such as statutes of limitations. *Phelps,* 30 F.3d at 662; *Charash,* 14 F.3d at 299. Absent an express statement that the parties intended another state's limitations statute to apply, the procedural law of the forum governs time restrictions on an action for breach, while the law chosen by the parties governs the terms of their contract.

*Phelps,* 30 F.3d at 662. As the Magistrate below concluded, Ohio's fifteen-year statute of limitations allowed this action against Mileti for breach of contract, though the parties chose California law to govern its substantive terms.

Accordingly, we affirm the Magistrate's judgment below.

WELLFORD, Circuit Judge, dissenting.

I believe that the assertion of personal jurisdiction over Mileti offends "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Mileti moved to California from Ohio in 1979. Calls and correspondence between Mileti in California and Cole in Ohio took place in 1984, resulting in the subject contract which the parties agreed would be construed in accordance with California law. It was not until 1994 that the plaintiff sought to hold Mileti responsible for breach of contract in Ohio.

*International Shoe,* the seminal case on the subject of personal jurisdiction, involved an assertion of personal jurisdiction in Washington over a nationwide shoe company based on the allegation that the company was doing business in that state. Jurisdiction over a foreign corporation doing some degree of business within a state involves entirely different jurisdictional considerations than personal jurisdiction over a nonresident individual with few contacts within the forum state. Even a corporation's conducting a single activity or "isolated items of activities" were not considered to be sufficient to establish personal jurisdiction if it maintained no property, business, or agency in the state. *International Shoe,* 326 U.S. at 317, 66 S.Ct. at 158–59. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790 (6th Cir.1996), also involved a corporate defendant. *Nationwide* held, among other things, that:

> [T]he existence of a contract with a citizen of the forum state, standing alone, will not suffice to confer personal jurisdiction over a foreign defendant. *Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185. Rather, "prior negotiations and contemplated future consequences, along with the terms of

the contract and the parties' actual course of dealing ... must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479, 105 S.Ct. at 2185–86. Further, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984)....

We give plenary review to the district court's decision regarding personal jurisdiction. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1261 (6th Cir.1996). Cole bears the burden of establishing jurisdiction over Mileti in Ohio. *Id. See also American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1168 (6th Cir. 1988). "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution." *Reynolds v. I.A.A.F.,* 23 F.3d 1110, 1115 (6th Cir.1994), *quoted in CompuServe,* 89 F.3d at 1262. This court must examine the limits of the statute and due process.

The majority sets out the tests this court adopts in these situations, but they are usually applied to corporations conducting some modicum of business in the forum state. *CompuServe* involved an individual conducting an internet business, Flashpoint Development, which placed software on CompuServe's communications system in Ohio. The agreement in *CompuServe* provided that Ohio law governed, and defendant "transmitted 32 master software files to CompuServe." *CompuServe,* 89 F.3d at 1261. The dispute in the *CompuServe* case involved deceptive trade practices—ongoing actions, unlike the single transaction involved herein. Therefore, *CompuServe* does not support the argument that Mileti "should reasonably [have] anticipate[d] being haled into court" in Ohio. *Id.* at 1263 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). Rather, I believe Mileti's contacts in Ohio, after his 1979 departure, to have been "attenuated." *Id. Compare Reynolds,* 23 F.3d at 1118–21,

and *Health Communications, Inc. v. Mariner Corp.,* 860 F.2d 460, 463–65 (D.C.Cir. 1988).

Each case involving the issue of personal jurisdiction over a nonresident defendant must be decided on its own facts. Most of the cases we have examined have involved tort claims against nonresident manufacturers or suppliers, or breach of contract claims.

. . .

The two related functions of the minimum contacts requirement are that it protects a defendant from the burden of litigating in an inconvenient forum and prevents the states from reaching out, through their courts, "beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

*American Greetings,* 839 F.2d at 1169.

This is a case between two individuals. It does not involve an Ohio corporation whose activities with nonresidents may occasion special interests or concerns in Ohio. I would find that Mileti has not been shown by the plaintiff to have any "substantial connection" in or with Ohio, nor that he would have been led "reasonably to believe that he was subjecting himself to the processes of the [Ohio] jurisdiction." *American Greetings,* 839 F.2d at 1169.

For the foregoing reasons, I believe personal jurisdiction in Ohio over California resident Mileti offends notions of fairness and equity in this case. Accordingly, I **DISSENT** because Mileti's motion to dismiss should have been granted. Plaintiff has simply failed in her burden of proof.