**PTG LOGISTICS, LLC, Plaintiff,**

v.

**BICKEL'S SNACK FOODS, INC., et al., Defendants.**

No. C–1:00–0333.

United States District Court, S.D. Ohio, Western Division.

Jan. 12, 2002.

Donald Jeffrey Ireland, Martin A. Foos, Faruki Gilliam & Ireland, Dayton, OH, for PTG Logistics LLC

Kimberly J Wile, McNees Wallace & Nurick, Columbus, OH, James P DeAngelo, Debra P Fourlas, Barbara A Darkes, McNees Wallace & Nurick, Harrisburg, PA, for Bickels Snack Food Inc.

### ORDER

BECKWITH, District Judge.

This matter is before the court on Defendants' motion to dismiss. Defendants move to dismiss this case for lack of personal jurisdiction under Rule 12(b)(2), improper venue under Rule 12(b)(3), failure to join a necessary party under Rule 12(b)(7), and failure to state a claim under Rule 12(b)(6). Doc. 3. Defendants have also requested an evidentiary hearing in the event that the Court decides that it has jurisdiction over either or both defendants. Doc. No. 10.

### I. *Background*

This is a diversity action brought by PTG Logistics, LLC (PTG), an Ohio carrier, against Bickel's Snack Foods ("BSF") and its parent company, Hanover Foods, both of York, Pennsylvania. Plaintiff has brought four claims for relief: for breach of contract, fraudulent misrepresentation, unjust enrichment and declaratory judgment.

This dispute arises over Defendants' alleged performance of and subsequent repudiation of a contract between PTG and BSF"s predecessor in interest, York Foods. The parties dispute whether there was a contract between PTG and BSF. However, PTG asserts the existence of a contract between itself and BSF and alleges that Defendants repudiated the contract and misrepresented their intention to enter into a new contract with PTG in order to induce PTG to return a security deposit it held under the terms of its contract with York Foods.

On November 18, 1996, PTG entered into a Transportation Services Agreement with York Foods to transport York's snack food products from its manufacturing plant and warehouse to various retailers. Complaint ¶¶ 9, 10. PTG agreed to purchase or lease the trucks and trailers necessary to perform its obligations, and York agreed to pay PTG a weekly fee for PTG's services, labor, and equipment. Complaint ¶ 10. Under the terms of the Agreement, York Foods made a deposit of $300,000 with PTG as security for performance of its obligations. Complaint ¶ 14. The Agreement was for a term of five years, ending in November, 2001. Complaint ¶ 10. The Agreement contained a forum selection and choice of law clause under which the parties to the Agreement sub-

mitted to the jurisdiction of the state and federal courts of Ohio. Complaint, Exhibit A.

On January 1, 2000, BSF, a subsidiary of Hanover Foods, purchased York Foods' snack food facility. Complaint ¶ 11. Although the York Foods/PTG agreement is not listed among the liabilities BSF assumed when it acquired York Foods, when BSF purchased the assets of York Foods, it purchased the rights to the remainder of the security deposit held by PTG under the York Foods/PTG agreement, which at the time of the purchase was $182,433. Defendants' Motion to Dismiss, Boeckel Affidavit ¶ 5. PTG records indicate that the two parties continued to perform under the terms of the PTG/York Foods contract until April, 2000 and that between January 1, 2000 and June 30, 2000, BSF made sixteen payments totaling $566,085.58 to PTG. Plaintiff's Memorandum in Opposition, Siekemeyer Affidavit, Exhibit B.

Discussions between PTG's Chief Operating Officer, Richard Siekemeyer, and Edward Boeckel, Jr., General Manager of BSF regarding modification of the York Foods/PTG agreement began five days after BSF purchase of York Foods when Mr. Siekemeyer telephoned Mr. Boeckel to congratulate him on the acquisition of York. In that conversation, Mr. Boeckel mentioned that Hanover was interested in renegotiating the agreement. Plaintiff's Memorandum in Opposition, Siekemeyer Affidavit ¶ 10.

On January 26, Woody Stoddard of BSF left a telephone message for Mr. Siekemeyer indicating that BSF was interested in reducing the size of PTG's fleet and asking PTG to modify its rates. Siekemeyer Affidavit ¶ 12. A series of telephone calls between the parties resulted in a meeting on February 1, 2000 in York, Pennsylvania between representatives of BSF and Hanover and representatives of PTG. At that meeting, the parties discussed modifications to the agreement, including fleet reduction and rate changes. The parties also discussed operational support issues regarding Hanover. Siekemeyer Affidavit ¶ 13.

At the February 1 meeting, Mr. Siekemeyer agreed that PTG would return the balance of the security deposit to BSF as a good-faith gesture, with the understanding that PTG and BSF were entering into a new contract. Complaint ¶ 19. PTG notified Mr. Boeckel on or about February 13, 2000, that PTG had credited BSF account in the amount of $182,422.01. Plaintiff's Memorandum in Opposition, Siekemeyer Affidavit ¶ 14.

On March 15, 2000, Mr. Boeckel telephoned PTG and indicated that BSF and Hanover were considering canceling the Agreement. Siekemeyer Affidavit ¶ 16. Nevertheless, both parties continued to perform their obligations under the Agreement. On April 14, Gary T. Knisely, Executive Vice President of Hanover, sent a letter to PTG disavowing the York Foods/PTG Agreement and asserting that it had never applied to BSF because the Agreement between York Foods and PTG was not among the liabilities BSF had assumed when it acquired York Foods. Siekemeyer Affidavit, Exhibit E.

PTG Logistics brought this action for breach of contract, fraudulent misrepresentation, unjust enrichment and declaratory judgment based on BSF's and Hanover Foods' actions in regard to the York Foods/PTG contract and their alleged misrepresentation of an intent to continue a contractual relationship with PTG that induced PTG to return the security deposit it held under the York Foods agreement.

## II.  *Analysis*

### A.  *Motion to Dismiss for Lack of Personal Jurisdiction*

The party seeking assertion of in personam jurisdiction bears the burden of

showing that jurisdiction exists. *Compu-Serve, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996). On a motion to dismiss for lack of personal jurisdiction, if the court relies only on affidavits without holding an evidentiary hearing, the court must consider all of the pleadings and affidavits in the light most favorable to the plaintiff and cannot consider evidence that controverts the plaintiff's evidence. *Id.* The plaintiff need only establish a prima facie showing of jurisdiction. *Id.*

Presented with a properly supported 12(b)(2) motion and opposition, the court has three alternatives: to decide the motion upon the affidavits alone; to permit limited discovery; or to hold an evidentiary hearing to resolve any apparent factual questions. *Serras v. First Tennessee Bank Nat. Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989). The court has discretion to decide which procedure to follow, and it will only be reversed for abuse of that discretion. *Id.*

■ To determine whether personal jurisdiction over a non-resident defendant exists, federal courts apply the law of the forum state, subject to the constitutional limits of due process. *Id.* In *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 638 N.E.2d 541, 545 (1994), the Ohio Supreme Court held that Ohio's long-arm statute does not extend to the constitutional limits of due process in all cases. *Id.* 638 N.E.2d at 545 n. 1 The Court must therefore examine the requirements of both the Due Process Clause and Ohio's long-arm statute to determine whether it can exercise jurisdiction over the Defendant. *LSI Industries v. Hubbell Lighting, Inc.,* 64 F.Supp.2d 705, 706 (S.D.Ohio 1999), *rev'd on other grounds,* 232 F.3d 1369 (Fed.Cir. 2000).

Personal jurisdiction over an out-of-state defendant can be either general or specific depending on the type of contacts the defendant had with the forum state. *Reyn-olds v. International Amateur Athletic Federation,* 23 F.3d 1110, 1115 (6th Cir. 1994). In this case, because neither Defendant had contacts within's the state of Ohio apart from those that gave rise to the cause of action, the Court must decide if plaintiff has established a prima facie case for the assertion of specific personal jurisdiction over the defendants.

Under § 2307.382(A)(1) of the Ohio Revised Code, "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's ... transacting business in this state." Although BSF disputes the existence of a contract with PTG, PTG asserts that it did have a contract with BSF and that BSF's acceptance of PTG's services and payment for those services under the terms of the York Foods/PTG contract established a contract between BSF and PTG. The facts in this case are very similar to those in *Advanced Polymer Sciences, Inc. v. Phillips Industrial Services,* 34 F.Supp.2d 597 (N.D.Ohio 1999), in which Phillips disputed the existence of a written contract with Advanced Polymer Systems (APS). The U.S. District Court for the Northern District of Ohio noted in that case that "APS has asserted the existence of a contract, and at this stage of the litigation, APS's assertions must be taken to be true." *Id.* at 599 n. 3. Having accepted the existence of a contract, the court found that the contacts arising from it were sufficient to bring the defendant within Ohio's long-arm statute. *Id.* at 598.

■ The Sixth Circuit's analysis of whether a defendant transacted business in order to bring it under the state's long-arm statute treats transacting business and availing one's self of the laws of the forum state as a two-step inquiry. Under *Southern Machine Co. v. Mohasco Industries,* 401 F.2d 374 (6th Cir.1968), business

is transacted in a state when obligations created or operations set in motion by the defendant have a realistic impact on the commerce of that state. *Id.* at 382. Similarly, a defendant has purposefully availed himself of the opportunity of acting there if he should reasonably have foreseen that the transaction would have consequences in the state. *Id.*

In *Southern Machine*, the Sixth Circuit held that an agreement for the manufacture and marketing of tufting machines in Tennessee had a direct impact on the commerce of that state. *Id.* at 383. In *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir.1972) the Sixth Circuit found that Van Dusen had transacted business in Ohio by entering into contract negotiations involving a substantial order for the manufacture of goods with a firm that it necessarily knew was based in Ohio. *Id.* at 227. A contract for services performed out-of-state does not have as great an impact on the state's commerce as a contract for the manufacture of goods performed within the state. Nevertheless, the Sixth Circuit's analysis in *In–Flight Devices* is applicable to the contract between BSF and PTG. BSF accepted services from and made payments to a company that it necessarily knew was based in Ohio. "That the making (and breaking) of a contract with the Plaintiff would have substantial consequences with the State of Ohio is a reality of which Defendant could not have been ignorant." *Id.* at 227.

■ Although BSF transacted business in Ohio to bring it within the state's long-arm statute under § 2307.382(A)(1), the same is not true for Hanover Foods. Hanover did not accept any services from PTG and did not make any payments to PTG. Hanover's only contacts with PTG were discussions regarding modification of the PTG/York Foods contract, including some discussions of PTG providing services for Hanover as well as BSF. However, these discussions took place in Pennsylvania and were extremely tentative. No contract between PTG and Hanover came out of them. Unlike BSF, Hanover Foods did not have an ongoing business relationship with PTG and created no obligations in Ohio. Hanover Foods did not transact business in Ohio to bring it within the jurisdiction of this Court under § 2307.382(A)(1) of the Ohio Revised Code.

■ If the Court determines that an out-of-state defendant comes within the forum state's long-arm statute, it must still inquire whether the assertion of jurisdiction over that defendant comports with traditional notions of fair play and substantial justice. Therefore, even if BSF transacted business in the state of Ohio, the Court must still determine that the exercise of jurisdiction over BSF does not violate due process. The Sixth Circuit applies the three-part test set out in *Southern Machine Co. v. Mohasco Industries*, 401 F.2d 374 (6th Cir.1968) to determine whether the assertion of specific personal jurisdiction over an out-of-state defendant meets the requirements of due process. The exercise of jurisdiction satisfies the requirements of due process if:

1) the defendant purposefully availed himself of the privilege of acting in the forum state or caused a consequence in the forum state;

2) the cause of action arose out of the defendant's activities in the forum state;

3) the acts of the defendant or the consequences caused by the defendant had a substantial enough connection with the forum state to make exercise of jurisdiction reasonable. *Id.* at 381.

The Sixth Circuit Court has called purposeful availment the "sine qua non" of personal jurisdiction. *Id.* at 381–382. The requirement that a defendant has purpose-

fully availed himself of the forum state distinguishes fortuitous, random contacts with the forum state from those resulting from the defendant's own actions and protects out-of-state residents from having to defend in a forum where they could not reasonably have anticipated having to do so. *See LAK, Inc. v. Deer Creek*, 885 F.2d 1293, 1300 (6th Cir.1989).

Although the Court may consider such factors as whether the defendant was ever physically present in the forum state, which party initiated contact or solicited business from the other, whether the defendant was the buyer or seller, and whether negotiations between the parties resulted in an actual contract, the test is ultimately whether the defendant "chose to deal with" the plaintiff. *See Southern Machine v. Mohasco*, 401 F.2d, 374 382 (6th Cir.1968).

In *Cole v. Mileti*, 133 F.3d 433 (6th Cir.1998), with very little examination of the terms of the contract or the parties' course of dealing, the Sixth Circuit held that "if . . . a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio." *Id.* at 436.

In the cases where the Sixth Circuit has found that defendants did not purposefully avail themselves of the forum state, the contacts between the defendant and the forum state have been of a more random nature than those between BSF and Ohio and did not create ongoing obligations in the forum state. In *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir. 1989), a case involving a real estate agreement between an Indiana general partnership and a Michigan limited partnership for the purchase of property in Florida, the Sixth Circuit held that the defendant's contacts with Michigan, the forum state,

were largely fortuitous and did not result in any ongoing obligation in Michigan. *Id.* at 1296. In *Market/Media Research, Inc. v. Union–Tribune Publishing Co.*, 951 F.2d 102 (6th Cir.1991), although the Sixth Circuit noted that the defendant did not make the initial contact and was never present in the forum state, these facts in themselves were less significant than the speculative nature of the parties' dealings and the fact that the defendant did not actively pursue an ongoing business relationship with the plaintiff. *Id.* at 105. In *Nationwide Mutual Insurance v. Tryg International Insurance Company*, 91 F.3d 790 (6th Cir.1996), the defendant's only performance in Ohio was to remit funds in the event of a quarterly net loss and to maintain minimum funds on account in Ohio as collateral. *Id.* at 795.

Unlike the speculative negotiations in *Market/Media* or the random contacts with the forum state in *LAK* and *Nationwide*, BSF's contacts with Ohio were continuous and deliberate. When BSF purchased York Foods in January, 2000, it did not notify PTG that it no longer would require its services, but, on the contrary, continued to accept those services. By accepting PTG's services, BSF created an ongoing obligation to remit payments to Ohio, which it did every two weeks for five months. During that time, BSF also engaged in discussions regarding modification of the contract between York Foods and BSF, indicating that it was well aware of the terms of that agreement. Although PTG may have initiated the majority of the contacts, BSF was not a passive onlooker, but was an active party to contract negotiations. PTG's trucks were on site at the BSF plant making deliveries from it on a regular basis. BSF and PTG were in regular communication with each other by telephone and letter. Because BSF knew that it was creating a continuing obligation

in Ohio and could have foreseen that its relationship with PTG could have consequences in Ohio, BSF purposefully availed itself of the privilege of acting in the state of Ohio under the Sixth Circuit's *Southern Machine* test.

The second prong of the *Southern Machine* test requires that the cause of action arise from the defendant's activities in the forum state. When the cause of action is for breach of contract and the defendant's activities in the forum state were connected with that contract, the second prong of the *Southern Machine* test is easily met. In *Cole v. Mileti,* 133 F.3d 433 (6th Cir. 1998), the Court held that, "If the cause of action is for breach of [the] contract [that satisfied the first prong of the test] then the cause of action naturally arises from the defendant's activities in Ohio." *Id.* at 436. Similarly, in *CompuServe v. Patterson,* 89 F.3d 1257 (6th Cir.1996), the Court found that if the defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts. *Id.* at 1266.

■ Although the plaintiff has brought a cause of action for fraudulent misrepresentation as well as for breach of contract, the Sixth Circuit has held that where a tort action arises out of a business relationship and the cause of action relates to commercial aspects of that relationship, jurisdiction may be predicated on the defendant's transaction of business in that state. *In–Flight Devices Corp. v. Van Dusen Air, Inc.* 466 F.2d 220, 231 (6th Cir. 1972). Because both causes of action arose out of the defendant's activities related to its contractual relationship with PTG, the second prong of the *Southern Machine* test is met.

■ The third prong of the *Southern Machine* test requires that the assertion of personal jurisdiction be reasonable. If the first two prongs of the test are met, the assertion of jurisdiction is presumed to be reasonable. *Cole v. Mileti,* 133 F.3d 433, 436 (6th Cir.1998). However, the Sixth Circuit has also noted a number of factors that should be considered in determining whether the assertion of jurisdiction is reasonable. These include the burden on the defendant of defending in the forum state, the interest of the forum state, the plaintiff's interest in obtaining relief, the interest of other states in securing the most efficient resolution of controversies. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1267 (6th Cir.1996), quoting *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169–70 (6th Cir.1988).

None of these factors presents a barrier to the assertion of jurisdiction over BSF in this case. The distance between Pennsylvania and Ohio is not so great as to make travel to Ohio prohibitive for the defendant. *See Aristech v. Acrylic Fabricators Limited,* 138 F.3d 624, 628 (6th Cir.1998) (holding that the distance between Kentucky and Ontario, Canada did not make the exercise of jurisdiction over a Canadian defendant unreasonable). Ohio has an interest in making sure that its residents get the benefit of their bargains. The plaintiff clearly has a strong interest in obtaining relief.

Defendant BSF transacted business in the state of Ohio by performing a contract with an Ohio corporation and thereby creating obligations that had a significant impact on the commerce of the state. By maintaining an ongoing business relationship with PTG and initiating discussions about modifications of the contract between PTG and York Foods, BSF purposefully availed itself of acting in the state of Ohio. The present cause of action arose directly from the defendant's activities in the forum state. Finally, because Ohio has an interest in ensuring that its residents receive the benefit of their bargains

and the burden on BSF of defending in Ohio is not great, the assertion of jurisdiction over BSF is not unreasonable.

Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction over Defendant BSF is not well-taken and is **DENIED.**

Plaintiff argues that the Defendants' alleged fraudulent misrepresentations provide an alternate basis for jurisdiction over both Defendants under § 2307.382(A)(6) of the Ohio Revised Code. Because the Court has found jurisdiction over BSF, it will consider whether § 2307.382(A)(6) provides a basis for the exercise of jurisdiction over Hanover Foods.

■■ Hanover Foods is the parent company of BSF. PTG does not assert that the two corporations are in fact one. The Sixth Circuit made clear in *Schwartz v. Electronic Data,* 913 F.2d 279, 283 (6th Cir.1990), that as long as the formal separation of a parent and subsidiary is maintained, the two corporations must be regarded as separate for the purpose of federal court jurisdiction. PTG has not alleged any lack of formal separation between Hanover and BSF. Therefore, for the purposes of jurisdiction, Hanover and BSF must be regarded as separate entities, and the plaintiff must establish a prima facie case for jurisdiction over each defendant. However, Plaintiff does not make separate arguments for the assertion of jurisdiction over Hanover Foods, but instead bases its claim for jurisdiction over Hanover on the same facts and theories as those it presents for the exercise of jurisdiction over BSF.

Plaintiff claims that Hanover caused a tortious injury in the state of Ohio by an act outside the state to bring it within the jurisdiction of Ohio under § 2307.382(A)(6) of the Ohio Revised Code. Under § 2307.382(A)(6), jurisdiction is predicated on the defendant's causing tortious injury in Ohio to any person by an act outside the state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in Ohio.

The fraudulent misrepresentations that PTG alleges are representations made by representatives of BSF and Hanover that led to PTG's returning the remainder of the security deposit to BSF. The first alleged misrepresentation is that by performing the contract, BSF and Hanover led PTG to believe that BSF had succeeded to all of York's rights and liabilities under the PTG/York agreement. However, only BSF performed the contract. Hanover could not have led PTG to believe anything on the basis of BSF performance of the contract.

PTG's second allegation of fraudulent misrepresentation is that Hanover and BSF misrepresented their intention of continuing a business relationship with PTG. Again, only BSF had a business relationship with PTG. Hanover could not have misrepresented an intention to continue a relationship that it did not have.

The final allegation of fraudulent misrepresentation concerns Hanover's and BSF's misrepresentation of their intent to enter into a renegotiated transportation services agreement. The agreement drawn up by PTG pursuant to the February 1 meeting is an agreement between PTG and BSF. Hanover is not named as a party to the agreement. The only reference to any agreement concerning Hanover in Mr. Siekemeyer's February 7 letter to Mr. Boeckel is that PTG had agreed to share carrier information that could improve both BSF"s and Hanover's operations.

All of the misrepresentations alleged were made on behalf of BSF. PTG has not alleged any fraudulent misrepresentations made by Hanover Foods representatives on behalf of Hanover Foods that induced

PTG to take any action that benefitted Hanover Foods.

Even if Hanover could be brought under Ohio's long-arm statute, assertion of jurisdiction over it would violate due process. Plaintiff has not alleged that Hanover had any contacts with Ohio other than those few it had with PTG. In *Conti v. Pneumatic Products*, 977 F.2d 978 (6th Cir.1992), the Sixth Circuit upheld the district court's finding that the plaintiff's action lacked a substantial enough connection to Ohio for it to assert jurisdiction over the defendant. *Id.* at 983. The district court found that, although § 2307(A)(4) and (A)(6) brought the defendant within Ohio's long-arm statute, the exercise of jurisdiction would violate due process because the defendant's only contacts with Ohio were those related to the plaintiff's hiring, including an airline ticket and employment contract mailed to him in Ohio and an isolated telephone call to the plaintiff in Ohio. Hanover's contacts with Ohio were even more minimal than those of the defendant in *Conti*, consisting only of one or two telephone calls and one letter sent to Ohio.

The one Ohio case PTG cites in support of jurisdiction of under § 2307.382(A)(6), *Cadle Co. v. Lobingier*, No. 96–T–5393, 1996 Ohio App.LEXIS 3480 at *7, 1996 WL 494884 at *3–4 (Ohio Ct.App. Aug. 16, 1996), in fact defeats its argument for jurisdiction. Although the Ohio Appeals Court found that § 2307.382(A)(6) applied, it went on to find that Ohio did not have jurisdiction over the defendant because the defendant had not had any contacts with Ohio.

Plaintiff has failed to establish a prima facie case for the exercise of personal jurisdiction over defendant Hanover Foods. Defendant's motion to dismiss for lack of personal jurisdiction over Hanover Foods is, therefore, well-taken and is **GRANTED.**

B. *Request for an Evidentiary Hearing*

Defendants have moved for an evidentiary hearing in the event the Court finds that the plaintiff has established a prima facie case for jurisdiction over either defendant. However, the facts upon which the court's exercise of jurisdiction over BSF are based are not disputed. BSF does not deny that it accepted PTG's services performed under the York Foods/PTG contract by making payments to PTG in Ohio. Whether BSF actually assumed liability for the York Foods/PTG contract must be decided on the merits but it is not necessary to decide that issue for the purpose of deciding if the Court has jurisdiction over BSF. BSF's undisputed performance of the PTG/York Foods contract is sufficient to establish this Court's jurisdiction over it. Defendant's request for an evidentiary hearing is **DENIED.** Because the Court has found that it does not have jurisdiction over Hanover Foods, Defendants' request with regard to Hanover Foods is **MOOT.**

C. *Defendant's Motion to Dismiss for Improper Venue or to Transfer the Action*

Defendants have moved to dismiss this action for improper venue under Federal Rule of Civil Procedure 12(b)(3). In the alternative, defendants move for transfer of this action to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1406.

■ The decision whether to dismiss or transfer is within the district court's discretion. *First of Michigan Corp. v. Bramlet*, 141 F.3d 260 (6th Cir.1998). Under 28 U.S.C. § 1391:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if

all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Defendants argue that venue in this district is improper because defendants do not reside in this district, no substantial events or omissions occurred in this district, no property which is the subject of this action is located in this district, and neither defendant is subject to jurisdiction in this district. Doc. No. 3. However, because the Court has found it has jurisdiction over defendant BSF, venue is not improper on the latter ground.

■■■■■ The Sixth Circuit has held that venue is proper in any district where a substantial part of the events giving rise to the claim occurred, including any forum with a substantial connection to the plaintiff's claim. *First of Michigan Corp. v. Bramlet,* 141 F.3d 260, 263 (6th Cir.1998). The Sixth Circuit noted in *First of Michigan* that this is not a comparative analysis of whether one district is better than another or whether more substantial events occurred in one district than in another. *Id.* The payments made by BSF to PTG were made in Ohio. The damage resulting from BSF's alleged fraudulent misrepresentations was felt in this judicial district. Ohio has a substantial connection to the plaintiff's claim. Therefore, venue in the Southern District of Ohio is proper. Accordingly, Defendant's motion to dismiss for improper venue is not well-taken and is **DENIED.**

D. *Failure to Join an Necessary Party*

Defendants also argue that this case should be dismissed for failure to join an necessary party under Rule 19 of the Federal Rules of Civil Procedure. Defendants argue that because Plaintiff claims that they took over the PTG/York contract by assignment from York, York is an necessary party because it will be able to contest or ratify PTG's claim that the contract was assigned to BSF. Defendants support their position with an unreported case from the Ohio Court of Appeals which held that the assignor of a contract is an indispensable party under analogous Ohio Rule 19. *See Lakeside Utilities Corp. v. Detrick,* No. 1093, 1982 WL 5796 (Ohio Ct. App. June 25, 1992). In response, PTG argues that it would be premature to dismiss to the case before any discovery is done. PTG says that it will add York as a defendant if and when it discovers facts which warrant adding York as a party.

Assessment of the question of joinder under Rule 19 involves a three-step process. Initially, the court determines whether a person who is not a party should be joined in the action if possible. This first step is embodied in Rule 19(a) as follows:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or oth-

erwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

Fed.R.Civ.P. 19(a). If the court determines that the person or entity does not fall within one of these provisions, joinder, as well as further analysis, is unnecessary. However, if the court finds one of the criteria is satisfied, the person is one to be joined if feasible and the issue of the existence of personal jurisdiction arises. If personal jurisdiction is present, the party shall be joined; however, in the absence of personal jurisdiction (or if venue as to the joined party is improper), the party cannot properly be brought before the court. *See Local 670, United Rubber, Cork, Linoleum & Plastic Workers of Am. v. International Union, United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 822 F.2d 613, 618 (6th Cir.1987).

If such is the case, the court proceeds to the third step, which involves an analysis of the factors set forth in Rule 19(b) to determine whether the court may proceed without the absent party or, to the contrary, must dismiss the case due to the indispensability of that party. The four factors set forth in Rule 19(b) include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy

if the action is dismissed for nonjoinder. *Id.*

The rule is not to be applied in a rigid manner but should instead be governed by the practicalities of the individual case. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 116 n. 12, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). The Sixth Circuit has noted that "[i]deally, all [the] parties would be before the court. Yet Rule 19 calls for a pragmatic approach; simply because some forms of relief might not be available due to the absence of certain parties, the entire suit should not be dismissed if meaningful relief can still be accorded." *Smith v. United Brotherhood of Carpenters and Joiners of America,* 685 F.2d 164, 166 (6th Cir. 1982) (holding it error to have dismissed Title VII case due to absence of contractors hiring through union).

The Court notes initially that Defendants do not argue that York claims an interest in the subject matter of the action such that the disposition of the action will prejudice any interest of York or subject it to double, multiple, or inconsistent obligations. Therefore, under the first step of the analysis, the only inquiry is whether complete relief can be granted to those already parties. Although Defendants contend that complete relief cannot be granted, they have not explained how relief will be incomplete in the absence of York. Defendants argument is essentially evidentiary and not procedural. That is, York undoubtedly is in a position to provide evidence which will prove or disprove the validity of the alleged assignment of the contract. However, the Court does not believe that complete relief cannot be granted to the parties joined. For instance, a judgment in PTG's favor will not likely leave Defendants exposed to a subsequent lawsuit by York.

This case should be compared to the situation in *Johnson & Johnson v. Coopervision, Inc.*, 720 F.Supp. 1116 (D.Del. 1989). In *Johnson & Johnson*, Plaintiff Johnson & Johnson purchased certain assets from Defendant Coopervision, some of which it later assigned to one of its subsidiaries, Iolab, Inc. Later, Johnson & Johnson brought fraud and breach of contract claims against Coopervision on the grounds that Coopervision had intentionally concealed its liabilities on certain promotional deals. Coopervision moved to dismiss the case because Johnson & Johnson failed to join Iolab as a party. The Court held that Iolab was a necessary party under Rule 19(a) because in its absence Coopervision would remain exposed to a subsequent suit by Iolab arising out of the same transaction. *Id.* at 1121–22. In contrast, in this case, the relevant subsidiary is aligned with the Defendants and not the Plaintiff. The Court seriously doubts that York would bring a lawsuit against its parent corporation no matter what the results of this case.

Consequently, the Court does not find that York is a necessary party to this case. Because York is not a necessary party to the case, the Court need not continue with the analysis to determine whether York is an indispensable party. Accordingly, Defendants' motion to dismiss for failure to join a necessary party is not well-taken and is **DENIED.**

### E. *Failure to State Claims*

Finally, Defendants argue that a number of PTG's claims are legally insufficient and/or the particular cause of action does not provide the relief requested. Specifically, Defendants contend that PTG has failed to state claims for unjust enrichment and return of the security deposit. In addition, Defendants argue that consequential and punitive damages are unavailable under PTG's first and fourth claims for relief and that there is no legal basis

upon which to grant an award of attorney's fees. The Court takes up these issues seriatim.

#### 1. *The Security Deposit*

Defendants argue that PTG has failed to state claims for return of the security deposit and for unjust enrichment because PTG has not pled any facts which show that it is entitled to retain the funds. Defendants point out that PTG has not alleged that they owe payment for any service rendered by PTG to them. In response, PTG argues that the terms of the contract give it an interest in retaining the security deposit and that Defendants have been unjustly enriched by retaining funds to which it is entitled.

Section 9.3 of the Transportation Services Agreement covers the payment of a security deposit to PTG. In pertinent part, this section provides that the shipper was to deposit $300,000 into an account of PTG's choosing as security for the shipper's performance. This section further provides that PTG could use the security deposit to offset unpaid charges. However, this section also provides that upon termination of the agreement, PTG was required to repay to the shipper the principal balance of the security deposit less any amounts deducted for unpaid charges. *See* Doc. No. 8, Ex. A, at 8–9. The plain language of Section 9.3 indicates that the purpose of the security deposit was to provide PTG a guaranteed fund from which to be paid for its services. Nothing in this section or any other provision of the contract indicates that the security deposit was to be considered a source of liquidated damages in the event of a breach of the contract by the shipper.

The Court assumes at this juncture, as do Defendants, that the contract between PTG and York/BSF is now terminated. A question obviously remains as to whether there has been a breach of

the contract. The Court agrees with Defendants that PTG is not entitled to keep the security deposit in the absence of any proof of damages or claims for payment for unpaid services. The Court disagrees with Defendants, however, that PTG has not stated some sort of claim for recoupment of the funds in the security deposit. In order to state a claim for unjust enrichment, the plaintiff must allege: 1) a benefit conferred by the plaintiff upon the defendant; 2) knowledge by the defendant of the benefit; and 3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 465 N.E.2d 1298, 1302 (1984). While not a model of clarity, the complaint does allege that PTG provided services to Defendants with the intention of being paid and that Defendants received and unjustly retained the benefits of those services. *See* Complaint ¶¶ 40, 42, 43. Although it is true that this claim does not specifically allege that Defendants have not paid for PTG's services, the implication of these allegations is that PTG has not been paid for services it provided to Defendants. Reading the complaint in that fashion, the Court finds that PTG has sufficiently stated claims for recoupment of the security deposit and for unjust enrichment.

Accordingly, Defendants' motion to dismiss these claims for failure to state a claim for relief is not well-taken and is **DENIED.**

### 2. *Consequential and Punitive Damages*

Defendants argue that PTG has failed to state claims for punitive and consequential damages because the contract at issue specifically precludes recovery of these damages in the event of a breach. Defendants also argue that punitive damages are unavailable for breach of contract unless a separate tort has been pled. PTG does not deny that the contract bars recovery of consequential and punitive damages, but responds that the contract may have been modified or amended during the course of the parties' renegotiation discussions to allow recovery of those damages.

Defendants are correct that the agreement precludes recovery of punitive and consequential damages. *See* Doc. No. 8, Ex. A, at 11 (Agreement § 13.1) ("[I]n any suit by CARRIER [PTG] against SHIPPER [York and/or BSF] in connection with this agreement, SHIPPER shall not be liable to CARRIER for consequential or punitive damages."). PTG's argument would have some force if it had made any allegations that the initial contract between it and York had been modified when BSF allegedly assumed performance of it. As it is, however, the complaint alleges that Defendants "are bound by the terms of the valid and legally binding November 18, 1996 agreement with PTG." *See id.* ¶ 28. If Defendants are to be bound by the terms of the contract and be held liable for a breach, then PTG is likewise bound to the agreement to exclude consequential and punitive damages. *See* Restatement (Second) of Contracts § 351 (1981), Reporter's Note ("When parties expressly exclude or limit consequential damages, the basic principles of freedom of contract counsel that the agreed upon provision should be enforced."). And, in any event, Defendants are correct that punitive damages are not available in an action for breach of contract except when pled in connection with a separate tort arising from the breach, which PTG has not done. *See R & H Trucking, Inc. v. Occidental Fire & Cas. Co.,* 2 Ohio App.3d 269, 441 N.E.2d 816, 819 (1981). Therefore, the Court concludes that PTG may not recover consequential or punitive damages for BSF's alleged breach of the Transportation Services Agreement.

The same is not true, however, with respect to PTG's claim of fraud. Under Ohio law, punitive damages may be awarded in tort cases involving fraud, insult or malice. *See Columbus Finance, Inc. v. Howard,* 42 Ohio St.2d 178, 327 N.E.2d 654, 658 (1975). Malice is defined as conduct characterized by hatred, ill will, or a spirit of revenge or retaliation. Malice is also characterized by intentional, reckless, wanton or willful conduct which causes injury to a person or property. *Id.* In this case, PTG's fraud claim alleges that Defendants acted willfully, maliciously and with intent to injure. *See* Complaint ¶ 38. Therefore, the Court concludes that PTG has adequately stated a claim for punitive damages.

### 3. *Attorney's Fees*

Finally, Defendants argue that PTG has failed to state a claim for an award of attorney fees because Ohio follows the American Rule under which each side bears its own costs of litigating the lawsuit. Federal courts generally apply state law when deciding whether to award attorneys fees on state law claims. *See Shimman v. International Union of Op. Engrs. Local 18,* 744 F.2d 1226, 1237 n. 17 (6th Cir.1984). While Ohio does generally follow the American Rule, attorneys fees may be awarded as an element of compensatory damages where the jury finds punitive damages are warranted. *Zoppo v. Homestead Ins. Co.,* 71 Ohio St.3d 552, 644 N.E.2d 397, 402 (1994). Because PTG still has viable punitive damages claims remaining due to its fraud cause of action, there remains a possibility that it will be entitled to recover attorney's fees as well.

Accordingly, Defendants' motion to dismiss PTG's claim for attorney's fees is not well-taken and is **DENIED.**

### *Conclusion*

In conclusion, Defendants' motion to dismiss for lack of jurisdiction over the person is **GRANTED IN PART AND DENIED IN PART.** The Court finds that it has jurisdiction over Defendant Bickel's Snack Foods. Therefore, as to Bickel's Snack Foods, the motion is not well-taken and is **DENIED.** However, the Court finds that it may not assert personal jurisdiction over Defendant Hanover Foods Corporation. Therefore, as to Hanover Foods Corporation the motion is well-taken and is **GRANTED.** The claims against Hanover Foods Corporation are **DISMISSED WITHOUT PREJUDICE.** Defendants' request for an evidentiary hearing is not well-taken and is **DENIED.** Defendants' motion to dismiss for improper venue and motion to transfer are not well-taken and are **DENIED.** Defendants' motion to dismiss for failure to join a necessary party is not well-taken and is **DENIED.** Defendants' motion to dismiss claims related to the security deposit is not well-taken and is **DENIED.** Defendants' motion to dismiss Plaintiffs claims for consequential and punitive damages is **GRANTED IN PART AND DENIED IN PART.** To the extent that Plaintiff seeks such damages for breach of contract, the motion is well-taken and is **GRANTED.** To the extent that Plaintiff seeks such damages under a fraud theory, the motion is not well-taken and is **DENIED.** Finally, Defendants' motion to dismiss Plaintiffs' claims for attorney's fees is not well-taken and is **DENIED.**

**IT IS SO ORDERED.**